MILLER v. MILLER et al., Appellants.

Division One, February 15, 1899.

1. **Dower**: LANDS HELD IN TRUST. A wife acquires no right to dower in lands that were held by her husband in trust for the support and education of a minor.

2. **Trusts**: DEED ON CONDITION TO SUPPORT MINOR: PARTITION. A deed was made to Miller upon the agreement that he would hold one-half of the land in trust for a minor girl whom he was to support and educate until she became of age, using the rents and the profits of the land for that purpose if sufficient, and if not sufficient he was to support and educate her anyhow, and. if he did so his compensation would be the other half of the land. He did not comply with the contract, did nothing for the child, and after his death the court appointed a trustee, directing him to carry out the trust, and he and and his successors as her guardians took possession of the land during her minority, and used for her maintenance the net profits arising therefrom, amounting, after the payment of the attorney's fees in the litigation establishing her rights, to $286.76 in thirteen years. When she arrived at age, Miller's heirs brought suit in partition, claiming an undivided half of the land, on the ground that she had had the benefit of whatever profits the land had yielded. *Held*, that as Miller and his heirs had done nothing toward supporting the child, they were not entitled to any interest in the land until they had accounted to her for a reasonable allowance for her support, education and maintenance up to the time she became of age, *and* that this sum should be ascertained and from it the net profits of $286.76 arising from the lands should be subtracted, and the balance paid her from a sale of the half of Miller and his heirs in the trust property, in addition to her own half thereof.

*Appeal from Clay Circuit Court.*—HON. E. J. BROADDUS, Judge.

REVERSED AND REMANDED.

SIMRALL & TRIMBLE for appellant.

(1) This an equitable partition suit. Courts of equity have concurrent jurisdiction with courts of law of all matters

of account between tenants in common or other cotenants. Either cotenant may invoke the assistance of equity to compel an accounting, upon showing a necessity therefor, and can not be deprived of this assistance merely because he has an adequate legal remedy by an action of account. Freeman on Coten. and Par. ( Ed. 1874), p. 377; Rozier v. Griffith, 31 Mo. 171; 1 Story on Eq. Jur. (7 Ed.), p. 659. (2)   An equitable lien exists in favor of appellant for the amount yet due her for education and support.   3 Pomeroy's Eq., sec. 1244, p. 242.    (3)   The finding by the trial court that "the rents and profits of said land have equaled and do offset her right to support, education and maintenance" does not preclude the appellate court from examining the evidence to ascertain whether or not that finding is correct. Equity cases are substantially triable *de novo* in the Supreme Court.   In such cases the Supreme Court is not bound by the trial court's findings of facts nor by its conclusions of law.   Blount v. Spratt, 113 Mo. 48.

CLAUDE HARDWICKE and MARTIN E. LAWSON for respondent.

(1)   There is no evidence showing or tending to show that there was ever an express lien conferred or reserved, either in favor of Ruby Miller or Edward T. Miller, on the interests that were conveyed to Moses W. Miller, junior, that were to become his absolute property.   The conveyances having been absolute on their face, without condition, reservation or limitation, and no express lien having been proven, it must be presumed that there was no such lien.   (2)   The consideration for such interests having been a promise to "support, educate and maintain said Ruby Miller until she became of age," the amount necessary therefor being uncertain and in dispute, and such promise not having been recited in the deeds themselves or in any other contemporaneous instrument that might be construed as a part of the

conveyances, and there having been no fraud shown on the part of Moses W. Miller, junior, there was no implied lien securing performance of such promise; and the remedy for a breach of such promise would have been not against the land, but against the promisor personally.   Pomeroy's Eq. Jur. (1 Ed.), sec. 1251; 28 Am. and Eng. Ency. of Law (1 Ed.), p. 165; Jones on Liens (1 Ed.); sec. 1071; Harris v. Hanie, 37 Ark. 348; Bell v. Pelt, 51 Ark. 433; Payne v. Avery, 21 Mich. 524; Hiscock v. Norton, 42 Mich. 320; Peters v. Tunnell, 43 Minn. 473; McKillop v. McKillop, 8 Barb. 552; Camp v. Gifford, 67 Barb. 434; Arlin v. Brown, 44 N. H. 102; Brawley v. Catron, 8 Leigh. 522; Meigs v. Dimoch, 6 Conn. 458; Hudelson v. Wilson, 40 Ill. App. 29; Clarke v. Royle, 3 Simons, 499; Parrot v. Sweetland, 3 Myln & Keen. 655; Toombs v. Con. Poc. Min. Co., 15 Nev. 444; Spring v. Harris, 36 Ark. 162; Bucklin v. Pocknell, 13 Sim. 406; Dixon v. Gayfere, 21 Beav. 118; Patterson v. Edwards, 29 Miss. 67; McDonald v. Elyton Land Co., 78 Ala. 382.

MARSHALL, J.—This is an action in partition and to adjust the equities of the parties.

Moses W. Miller died leaving two sons, Edward T. and Moses W. Miller, Jr.   On the 15th of August, 1879, Edward T. Miller conveyed his half interest in the land inherited from his father to his brother, Moses W. Miller, Jr., by a straight deed, for an expressed consideration of $500, but in truth to be held by Moses in trust, one undivided one-half in trust for Ruby Miller, then a minor, during her minority, and to be conveyed to her when she became of age, and the other one-half for himself, but the consideration for the one-fourth so conveyed to Moses was that he should support, educate and maintain Ruby Miller until she should become of age.   On the 29th of December, 1879, Edward T. Miller purchased another tract of land and had it conveyed directly to Moses W. Miller, Jr., to be held by him

upon the same trust, terms and conditions as stated in reference to the inherited property, except that Moses was to have one-half of this tract. There was nothing in either deed expressive of this trust. Ruby was then a minor of tender years. Edward died about March 10th, 1880, and Moses died on the 29th of October, 1881. Moses took possession of the lands and wholly failed to support, educate or maintain Ruby, but on the contrary paid nothing for her and left her to the compassionate care of others who were under no such obligations to her. After Moses died his heirs refused to recognize the trust and its obligations, and claimed the whole property. Ruby, by her next friend, brought suit against the heirs of Moses, to have a trust declared in her favor, and upon a hearing the chancellor, on March 6th, 1883, declared the rights of the parties as they are herein stated to be, and appointed Henry S. Miller trustee in place of Moses, deceased, directing him to carry out the trust, make annual reports to the court, and give bond as trustee. There was no appeal from this decree and it remains in full force. On the 26th of August, 1882, the probate court of Clay county appointed Henry S. Miller guardian of Ruby Miller. The first settlement of the guardian made in 1885 shows that he received as rents for the land $280, and he took credit for $200 for two years' support, education and maintenance of the ward, three hundred dollars paid as attorney's fees in the equity case, and this, with the probate fees, aggregated $513.85, and left a balance due the guardian of $233.85. His second settlement, made in 1888, shows that he received $130 a year rent for the land from March 1st, 1885, to March 1st, 1888, aggregating $390. He took credit for $200, being one-half of the expense of digging a pond "to secure stock water," making fences, etc.; for $250 for his services in the litigation to have the trust declared; deducted the $200 he had taken credit for support, education and maintenance of the

ward in his first settlement from the $233.85 balance due him under that settlement, and these items, with the probate fees, showed a total credit of $495.35, and left a balance of $105.35 due the guardian.  His final settlement made in 1889 shows he received as rents for the year from March 1st, 1888, to March 1st, 1889, $150, and his credits show that he paid to the ward "for household and kitchen furniture" $100, and this, with various small items allowed by the probate court, and the balance of $105.35 due the guardian on his settlement in 1888, left a balance due the guardian of $65.60.   On the 13th of October, 1890, Ruby Miller having reached the age of fourteen years, selected John T. Hall as her guardian and curator.  He qualified and gave bond. His first settlement, made in 1891, showed he had received for rent and for other purposes $162 and that he paid out for Ruby $43.30, which with sums paid for taxes and other small items allowed by the probate court, aggregated $160.55, and left a balance due the ward of $1.45.  His second settlement, made in 1892, showed he had received for rent $80, which with the balance of $1.45 due the ward on his first settlement, aggregated $81.45, and that he had paid for Ruby, $28.20, which with taxes and allowances made by the probate court, aggregated a total credit of $82.55, and left a balance due the guardian of $1.13.  His final settlement, made in 1894, shows he had received for rent $390, and that he paid Ruby $33 in 1893, and with the other allowances made by the probate court aggregated $307.74, which left a balance due Ruby of $82.26, which he paid to her and was discharged.   Thus showing that between 1881 when Moses died and 1894 when Ruby attained her majority, the whole land yielded $1,452, or an average of $111.64 a year and that of this Ruby received only $286.76, or an average of $22.05 a year.

Immediately after Ruby became of age, the heirs of Moses W. Miller, Jr., instituted this action, seeking to have

the property partitioned and asking that the rights of the parties be adjusted. The answer of the defendant, among other things, set up the total failure of Moses to carry out the terms of the trust and upon compliance with which he was to have one-half of his brother's share of their father's estate, and one-half of the property afterwards purchased by his brother, and asked that Ruby be paid out of the share of Moses the sum of two hundred dollars a year, from August 15th, 1878, the date of the first conveyance in trust, up to the date she attained her majority in 1894, as and for her support, education and maintenance, and that it be decreed a lien on the individual interest of Moses in the land. There was evidence that $175 to $200 a year would be reasonably required to support and maintain the minor.

The circuit court made a special finding of the facts, substantially as stated herein, and concluded it as follows: "And the court further finds that, under the decree of this court, rendered March 6th, 1883, defendant Ruby Miller, was entitled to receive from Moses W. Miller, Jr. support, education and maintenance until she became of age, and that since March 6th, 1883, defendant Ruby Miller, has received and enjoyed all the rents of said land, and that the plaintiff and other defendants have received no part of said rents. And the court further finds that said rents, so by said defendant Ruby Miller enjoyed since March 6th, 1883, have equaled and do offset her right to said support, education and maintenance until she became of age." The court thereupon entered a decree of partition, appointed commissioners to admeasure and set off dower to the widow of Moses W. Miller, Jr., "in said lands" and to "make said partition herein adjudged of the residue of said lands."

After proper steps defendant Ruby Miller appealed to this court.

## I.

The learned chancellor erred in awarding dower to the widow of Moses W. Miller, Jr., "in said lands," and in directing partition "of the residue of said lands." Under the decree of March 6th, 1883, Moses W. Miller, Jr., was a trustee for Ruby Miller as to one-fourth of eighty acres of land inherited by Edward T. Miller from his father and was likewise trustee as to one-half of the sixty acres of land afterwards purchased by Edward and conveyed to Moses. As to this part "of said lands" Moses was never seized of an estate of inheritance, at any time during the marriage, and therefore his widow is not entitled to dower in them. A wife acquires no right to dower in lands that were held by her husband as trustee. [R. S. 1889, sec. 4513; Park on Dower, star p. 100, ch. VI.] .

## II.

The principal contention of the defendant is that the circuit court erred in holding that the rents enjoyed by Ruby Miller since March 6th, 1883, "have equaled and do offset her right to said support, education and maintenance until she became of age." This ruling disposed of the main point of controversy between the parties. The defendant Ruby Miller, claimed that as Moses W. Miller, Jr., never contributed a cent towards her support, education and maintenance, and as his contract with his brother that he would support, educate and maintain her until her majority was the consideration upon which his right to the land vested, a court of equity should ascertain what a reasonable sum for that purpose would be, and decree it to be a lien on the portion of the trust estate belonging to Moses. Defendant Ruby Miller, further claims that in estimating what she had received since 1883, the portion that accrued from her share of the trust fund should not be considered or taken into

account, but that only the rents arising out of the interest of Moses in the trust estate should be allowed as a credit upon the sum found by the court to be a reasonable sum for her support, education and maintenance. The plaintiff combats the first contention by claiming that the court can not ascertain the sum to be allowed and fix it as a lien on Moses' interest in the land, because there was no lien on that interest expressly reserved in the deed to secure the performance of Moses' promise, and therefore the proper remedy was by a personal action against Moses for breach of contract; and she denies the correctness in law of the second contention of defendant, and insists, that the rents received by Ruby after 1883 were sufficient to support, educate and maintain her. The court adopted plaintiff's view, and this is here assigned by the defendant as error.

If the purpose Edward T. Miller had in view when he conveyed the property to Moses is considered and always borne in mind, the questions presented in this case are not at all difficult of solution. Edward intended to make a suitable provision for the support, education and maintenance of Ruby. If he had conveyed the property to trustees with directions to use the rents, issues and profits for this purpose, and if they were not sufficient, then to use a portion of the principal, the duties of the trustees would have been simple. She would have received the rents, issues and profits after paying taxes, repairs and the compensation the court might allow the trustees for their services, and whatever of the principal remained when she reached her majority would have been hers absolutely. Instead of taking this course he conveyed the property to his brother upon the agreement that he should hold one-half of it in trust for Ruby to be turned over to her when she became of age, that he should support, educate and maintain her until that time, using the net rents, issues and profits for that purpose if sufficient, and if not sufficient he should support,

educate and maintain her at all events and under any contingencies, and if he did so his (Moses') compensation for the expense, obligation and risk he thus assumed should be the other half of the land conveyed. We are not concerned whether Moses made a bad bargain or not. He was *sui juris* and he made it. He never made any pretense whatever of complying with his contract or living up to his trust obligations. During his life he did absolutely nothing for the helpless child. After his death his heirs denied the obligation and repudiated the trust, and disinterested persons were obliged to take up the child's cause and appeal to the courts for justice. The trust estate was put to an expense of $750 by this action of the heirs of Moses. That sum exceeds fifty per cent of the gross rents and profits that arose from the trust property after the court righted the wrong that these heirs tried to perpetrate and before Ruby became of age. Now these same heirs say it is no concern of theirs whether the rents, issues and profits were sufficient to support, educate and maintain Ruby during her minority or not; that they are not responsible for any mismanagement of the trust estate after they were defeated in their attempt to confiscate it all, nor for any expense that was incurred to defeat their unjust claim. They plant themselves squarely upon the proposition that Ruby is of age, and they want one-half of the land, totally ignoring the fact that their father did not comply with the terms of his contract upon which his right to any part of the land depended. They stand here in the attitude of not having borne the burdens of the contract, but claiming the fruits of the contract, to which they would only have a right upon showing that they had borne the burdens. They ask equity although they have not done equity, and refuse still to do equity.

One of the risks Moses assumed was that if the rents, issues and profits of the whole land were not sufficient to support, educate and maintain Ruby, he would make up the

deficit, and would get his pay when Ruby became of age by becoming the owner of one-half of the trust estate. Now his heirs want the reward, although admitting it has not been earned.

We do not so understand the principles and practices of equity. Ruby was entitled to support, education and maintenance at the expense of Moses until she became of age. Moses was entitled to use the net rents, issues and profits arising from the whole trust property to reimburse himself for his expense. If the net rents, issues and profits were not sufficient to meet the expense of Ruby's support, education and maintenance, the deficit was the price Moses agreed to pay for his half interest in the trust property which he was to get when Ruby attained her majority. The net issues and profits amounted to only $286.76 for thirteen years. She was supported by persons who were under no contractual obligations and who were not working for a reward, but this fact does not justify the claim of Moses' heirs to the land when they and their ancestor have not earned it.

Ruby is entitled to a reasonable allowance for the support she did not get from Moses, and from this sum should be deducted the $286.76 she has received as the net rents, issues and profits, and the balance should be deducted from the interest of Moses and his heirs in his part of the trust property. The land should be ordered sold and this balance should be paid to Ruby in addition to her half interest in the property conveyed by her father to Moses. In this way alone can equity between the parties be meted out. This is a proceeding in equity and the court having jurisdiction of the cause should do complete equity between the parties.

There is no difficulty, such as plaintiff suggests, about the court liquidating the amount rightfully due Ruby for support, education and maintenance, and at the same time requiring the Moses heirs to pay it or charge it as a lien on their share or to sell the property and deduct it from their

share of the proceeds.   The same principle is observed as in cases of a creditor's bill in equity.   If the property had passed into the hands of a third, innocent party, for value and without notice of such a charge on the land, the case would be different, and the lien could not be enforced, and Ruby would be relegated to her remedy of a personal action against the promisor for breach of contract.   But in this case the heirs of the promisor are claiming the res, which, ever since the decree in 1883, to which they were parties, was rendered, has had this trust impressed upon it, which has the same effect as if the lien had been reserved in the deed to Moses.   They have never discharged the requirements of the trust, and hence can not complain, if the court does for them now what they and their ancestor should have done long ago, as a condition precedent to awarding them any share of the trust estate.   Neither can these heirs urge a mismanagement of the trust estate, whereby the net rents, issues and profits were rendered insufficient to support, educate and maintain Ruby, for it was their tortious act which caused the expenditure of over fifty per cent of the gross receipts of the trust estate, and being responsible for the litigation, it does not lie in their mouth to question this expenditure; and the other items of expense in managing the trust estate, were allowed and approved by the judgment of the probate court, and hence are *prima facie* correct under any circumstances.

Edward T. Miller intended that Ruby should be supported, educated and maintained out of the trust property. How well his expectations have been realized is seen when we consider that in the thirteen years of her minority after the trust estate was created, she received only $286.76 from the trust estate.   This amounts to the munificent sum of $22.05 a year, or about $1.84 a month, or 6 and a fraction cents a day.   The greatest economist that ever lived never would dream that a young girl could be supported, educated

and maintained for any such sum. And Ruby was not. Other persons, kinder than Moses and his heirs, took care of her, or she would never have been a party to this suit.

But enough. Words can not make plainer the equity in this case. It speaks louder than words.

The judgment of the circuit court is reversed and the cause remanded to be proceeded with in accordance herewith. All concur.