CHARLES DRECKSHAGE, Appellant, v. GEORGE W. DRECKSHAGE and SIBYL DRECKSHAGE, his wife.—No. 38632.—176 S. W. (2d) 7.

Division One, December 6, 1943.

*John P. Griffin* for appellant.

*W. G. Marbury* and *Louis B. Sher* for respondents.

■ DALTON, C.—Action to quiet and determine title to described real estate in Jefferson County. Defendants by a cross action sought to quiet title in defendant George W. Dreckshage. The trial court found said defendant to be the fee simple owner and plaintiff appealed. We have jurisdiction because title to real estate is directly involved.

In his petition plaintiff alleged that he was the owner of the described real estate; that on January 4, 1939, he had, without consideration, conveyed said real estate to defendant, George W. Dreckshage, as trustee for plaintiff; that the deed made no reference to the trust, but that on request of plaintiff, said defendant had on March 6, 1939, reconveyed to plaintiff; that on March 15, 1939, defendant Sibyl Dreckshage, wife of defendant George W. Dreckshage, had quitclaimed to plaintiff; that the separate deeds of defendants, instead of a joint deed, "cast a cloud on the title to said real estate" affecting the merchantability of said title; and that defendants, although requested, refused to execute a joint deed. Plaintiff did not ask for the removal of the cloud, but asked a decree that defendants had no right, title, or interest in the premises; that they be enjoined from asserting title; and that plaintiff be declared the fee simple owner.

The defendants' answer was a general denial and a plea that the petition did not sufficiently describe the interests of the parties to give an equity court jurisdiction. In a cross petition defendants admitted the conveyance of the real estate by plaintiff to defendant George W. Dreckshage on January 4, 1939; the reconveyance by said defendant to plaintiff on March 6, 1939; and the execution of the said quitclaim deed by defendant Sibyl Dreckshage to plaintiff on March 18, 1939. Defendants charged that the deed of reconveyance by defendant George W. Dreckshage was void by reason of the alleged fraud, misrepresentation and duress by plaintiff; and that the quitclaim deed of defendant Sibyl Dreckshage was void under Sec. 3402 R. S. 1939. Defendants further alleged that the conveyance by the plaintiff to defendant George W. Dreckshage was with the understanding that said defendant would cause the rentals to be collected and, after payment of necessary expenditures, repairs and taxes, would pay over to plaintiff "all the net rentals received from such property"; that, "pursuant to plaintiff conveying all of his property to defendant George W. Dreckshage," said defendant had "remitted to him the net proceeds thereof" and "performed all of the terms of the agreement so made by him with the plaintiff as aforesaid"; and that "in connection

with the said arrangements . . . he made many trips . . . to see that the request of plaintiff was fully complied with and to exercise general supervision and control over said property for the benefit of the plaintiff.'' Defendants did not ask to have their deeds cancelled or set aside, but that plaintiff be enjoined from asserting an interest; and that the decree provide ''that the defendant is in fee simple the owner''; ''that the plaintiff has no right, title or interest''; and that ''the said defendants are bound by contract to pay over to this plaintiff the net rentals, after the payment of costs for repairs and taxes on said property, resulting from said property during the lifetime of said plaintiff.''

By reply plaintiff denied the allegations of the cross petition and alleged that, due to age and lack of business experience, he did not know he was conveying title to his property to defendant George W. Dreckshage; that he had implicit confidence in the honesty of said defendant; that he did not intend to give his property to said defendant and deprive himself of the use and benefit of it; that all was done by said defendant to defraud plaintiff and unjustly enrich himself; and that said defendant had counterclaimed in another suit for alleged services to plaintiff.

In the decree which found the allegations of defendants' cross petition to be true and adjudged defendant George W. Dreckshage the fee simple owner of the real estate, no mention whatsoever was made of plaintiff's right to the net income (net rentals), although such interest therein was expressly admitted by the defendants.

Appellant says that defendants' cross action was one for the ''cancellation'' of their deeds to plaintiff, and that plaintiff's action at law was converted into a suit in equity. Johnson v. McAboy, 350 Mo. 1086, 169 S. W. (2d) 933, 934. It is apparent that the cause was tried below as one in equity and we will review it on the same theory. Oetting v. Green, 350 Mo. 457, 166 S. W. (2d) 548. We shall refer to defendant George W. Dreckshage, plaintiff's nephew, as defendant or George, and to defendant Sibyl Dreckshage as defendant's wife.

Plaintiff offered evidence tending to show that, at the time he conveyed the real estate, he was 65 years of age; that his wife had always attended to the family business; that she had recently died; that he had never made a conveyance of real estate; that he did not know what the word ''trustee'' meant, nor understand the trustee relationship; that he did not have any understanding or arrangement with defendant concerning the conveyance; and that he did not, at that time, know he was conveying the absolute title to all of his property to defendant. He admitted he had signed the deed and ''executed papers'' but insisted the attorney who drew the deed had said it did not ''tie'' him up in any way. He claimed he inquired about being able to sell some of the property and was advised he would have

to "get together with George." The deed itself recites that the conveyance is "for and in consideration of the sum of One Dollar and other good and valuable consideration paid by the said party of the second part, the receipt of which is hereby acknowledged." According to plaintiff, immediately after the deed was delivered to defendant, defendant told the attorney to give plaintiff $50.00 per month for his support, and plaintiff insists that this was the first information he had that he had done something wrong or had made a mistake. He said he then changed his mind and decided he had been "gypped," but that he didn't actually know what he had done until a later date.

By his testimony, plaintiff sought to create the impression that the defendant was the active party in all of their relationships. He said that defendant visited him frequently before his wife died and, thereafter, recommended an undertaker; that defendant secured the probate of his wife's will, and took plaintiff to a real estate man, who was appointed to take charge of the property and collect rentals and remit to plaintiff; that defendant took plaintiff to an attorney to see about having his will drawn; that plaintiff had a will drawn leaving the bulk of his property to defendant, with $500 each to other nephews and a niece; that the will was delivered to defendant; that defendant later took plaintiff to an attorney when the deed to defendant was drawn; that defendant conferred with the attorney each time in advance of plaintiff; and that defendant took plaintiff to a banking institution, where the cashier advised plaintiff it would be best to turn his property over to defendant to manage, because defendant would have to take care of him anyway.

After the plaintiff deeded all of his real estate to defendant, defendant took over the management of the property, paid all taxes and repairs and paid the net rentals over to plaintiff. On one occasion plaintiff sold three pieces of property and had defendant and his wife to make a deed to the purchaser. Plaintiff also cooperated with defendant in making improvements on the property in question. The improvement consisted of building two rooms to a house, setting out fruit trees and doing other things. Both plaintiff and defendant assisted with the work and defendant secured the assistance of some of his friends. It is admitted that all improvements were paid for with funds of the plaintiff. Plaintiff and defendant were then on friendly terms. Plaintiff further sought to explain his conduct by saying that he understood defendant had been made trustee when the deed was made and when plaintiff was appointed executor of his wife's estate. In a short time, plaintiff admits that he "fell out" with the defendant. He told defendant's brother Roy about the matter and Roy sent him to a firm of attorneys for advice. There he learned he had conveyed his property to defendant and he, thereafter, secured a reconveyance of it. The deeds of the respective defendants to plaintiff were identified and received in evidence.

Plaintiff further testified that on January 4, 1939, when his deed to defendant was executed, the attorney drew up and defendant signed an instrument in writing, which was delivered to plaintiff. Plaintiff offered this instrument in evidence but, upon objection being made that there was no allegation in the petition seeking to establish an express trust, the exhibit was excluded. ' The exhibit is as follows: "Whereas, Charles Dreckshage has on this 4th day of January, 1939, transferred title in certain pieces of real estate into my name, and ██ Whereas, I am to hold this property as trustee for him. Now in order that if I die the fact that I am only his trustee in respect to this property may be known, I hereby declare that my only interest in all the property this date conveyed to me is that of a trustee for the benefit of Charles Dreckshage, that all income from the property belongs to him and that he has full right to revoke and terminate this trust at any time and title to the property shall be transferred as he directs. (Signed) George W. Dreckshage."

Plaintiff further offered an affidavit, which he testified was signed and sworn to by defendant on March 6, 1939 (when defendant reconveyed to plaintiff), to the effect that the conveyance of the described real estate to defendant on January 4, 1939 was as trustee for plaintiff; that the word "trustee" was unintentionally omitted from the deed; that defendant was acting only as trustee for plaintiff; that he received the conveyance as such and "not in his own right as his absolute property"; that it was intended for plaintiff to have all rents and income; and that an instrument had been executed and delivered to plaintiff on January 4, 1939, showing that the described real estate "was conveyed to the said George W. Dreckshage solely as trustee." This exhibit was objected to by defendants on the ground that it was ambiguous and self serving to plaintiff; that affiant was then under duress and coercion, as alleged in the cross petition; that the exhibit "attempts to create an express trust" contrary to plaintiff's deed to defendant, and that it violated statutory provisions. The court excluded the exhibit from evidence and held that the exhibit was not "consistent with the theory upon which plaintiff was proceeding, to wit, that he didn't know what he was doing when the conveyance was made to defendant." The court further held that the statement was not admissible against defendant as one against interest.

Defendant testified in behalf of himself and wife that he was sergeant of police in St. Louis and had been with the police department 26 years; that he worked in the neighborhood of his uncle's residence and visited him during the illness of his wife; that he handled business affairs for them; that, after his aunt's death, his uncle had trouble collecting rents and he assisted; that he assisted his uncle in arranging for an undertaker and in securing funds for the funeral bill; that he recommended an attorney to handle his aunt's estate; that his

uncle wanted a will prepared and he sent him to an attorney who wrote the will; that his uncle wanted to leave all his property to him; that he suggested $500 each for his brothers and a sister and the will was so written; that he was friendly with his uncle and drove him out to his farm often; that he assisted in making improvements thereon; that all assistance was at plaintiff's request, since plaintiff had no means of conveyance; that on one occasion, while returning from the farm, his uncle told him he was going to change his will, deed the property to him and let him use the proceeds of the rent for the upkeep of the property; that the property was deeded over at an attorney's office and defendant agreed "to take care of plaintiff"; that when the deed was signed and acknowledged, the notary asked plaintiff, if he knew he was conveying the property to defendant, and defendant said that he did; that there was no conversation about any $50.00 per month; that plaintiff then proceeded to make the improvements mentioned, to buy the materials, to secure the assistance of his friends and to assist in the work himself; that all rents and moneys collected were turned over to plaintiff, and nothing was retained to pay defendant for any work; that things went fine, until one day his brother and sister-in-law went to the farm to bring the plaintiff back home; that defendant did not see plaintiff for sometime thereafter; and that, when he did, the plaintiff wanted the property back, said he was informed he was a poor man and no longer owned the property.

Defendant further testified that the "trust business" came about at plaintiff's request, because plaintiff wanted defendant to act for him; that his (defendant's) brother Roy first told him that plaintiff was inclined to go to the Board of Police Commissioners to cause trouble, if the property was not deeded back; that his brother said there was a possibility of him getting into trouble, since plaintiff's wife had not been dead a year when the conveyance was made; that plaintiff came in and said the same thing and he (defendant) replied, "It is agreeable with me"; that plaintiff's attorney called and said the property would have to be deeded back, the deed was useless, because made within a year of the wife's death and that he would hate to have to file suit or "take it up with the commissioners"; that the attorney later "threatened to go to the commissioners," unless the deed was made; that he went to the attorney's office and signed the deed; that he signed the deed and had his wife sign the quitclaim for fear of his job, that is, because of his job being in jeopardy; and that his whole family wanted the property deeded back to plaintiff.

The court refused to permit defendant to be cross-examined about either the statement of January 4, 1939, or the affidavit of March 6, 1939, on the ground that the theory of an express trust was wholly inconsistent with the issues raised in plaintiff's petition; and that

plaintiff was trying his case on two theories, to wit, a void deed to defendant and a trusteeship.

Defendants' other evidence tended to show that plaintiff opened an account with a banking institution and requested the account be in the name of defendant as trustee for plaintiff; that it was handled accordingly and the parties came to the bank together for about a year; that plaintiff was not capable of handling his affairs and relied upon defendant; that a bank official encouraged plaintiff to turn his property over to defendant, when plaintiff said he was going to do so; that plaintiff knew what he was doing when the will and deed were drawn and he gave directions; that plaintiff cooperated in all of the improvements; and that he told various parties he had turned the property over to defendant and whatever defendant did was all right. Plaintiff told one witness "he was getting old and that it was hard for him to manage the property and he wanted it deeded to George with the understanding that George would take care of him the rest of his life." He told another witness "he had done wrong by taking George away from the place." Other witnesses said that while plaintiff told him George was boss and owned the place, yet he (plaintiff) claimed to own it; and that defendant's parents and brothers caused the trouble and insisted the property belonged to plaintiff.

In rebuttal plaintiff testified that he went to the police station, saw defendant and said, "George, why don't you deed this back to me and save me a lot of trouble and expense"; and that defendant said he would. Plaintiff admitted he had changed his mind, since his original conveyance, and said he changed it because he "was getting the worse of it" and wanted the property back.

Defendant's brother Roy testified that plaintiff complained to him about the defendant having all of his property; that witness saw defendant at the police station, but no threats were made; and that defendant said, "Sure, I'll give it all back without any trouble." The attorney, who handled the reconveyance, testified to seeing defendant about deeding the property back. He said no threats were made, but defendant said he would be willing, although he might have some difficulty having his wife join with him in a deed. Defendant at no time objected to executing a deed, but separate deeds had to be taken, because defendant and his wife were having domestic difficulty. This difficulty occasioned the "quitclaim (affidavit) executed by him, showing he had held title only in the capacity as a trustee, . . . executed at the time the deed was executed." The court refused to permit any further examination of the witness with reference to defendant's affidavit on the theory (1) that it had nothing to do with the case; and (2) that it was not consistent with the case pleaded by plaintiff nor the theory upon which it was being tried.

The record of proceedings in the trial court, and the briefs here, evidence considerable confusion concerning the issues presented.

For example appellant (plaintiff) contends the court erred in failing to hold that the original conveyance was obtained by defendant from plaintiff by fraud and misrepresentation, without consideration, and without plaintiff knowing that he was conveying title or intending to do so. No such issue was presented by the petition, although perhaps suggested by the reply, but no such relief was asked in any pleading. In any event, the cause of action could not be stated in the reply. Regal Realty & Investment Co. v. Gallagher (Mo. Sup.), 188 S. W. 151, 155. Respondents contend the reply constitutes a departure and attempts to set up a cause of action in equity to establish an express trust, and further say the petition does not state a cause of action, either to establish an express trust or to show that the original deed was obtained by fraud or undue influence. Respondents insist that neither the pleadings nor proof are sufficient to meet the requirements of Sec. 3494, R. S. 1939, to establish an express trust; and that the decree was for the ▇▇ right party and should be sustained. It will be unnecessary to determine the validity of plaintiff's deed to defendant or the sufficiency of pleadings or evidence to secure relief in equity by establishing an express trust. The sufficiency of plaintiff's deed to transfer title to defendant is admitted and plaintiff seeks no equitable relief to establish an express trust.

Appellant assigns error on the finding for defendant on both the petition and cross petition. Appellant insists that upon the evidence the described real estate belongs to him and that the defendants have no interest therein and no right to have their deeds to plaintiff cancelled. Appellant, also, contends the decree of title in defendant is erroneous on the face of the record, since defendants admitted the plaintiff had an interest in the described real estate. These and other assignments are sufficient for a review of the cause on its merits.

▇▇ We first consider an assignment of error based upon the exclusion of the statement executed and delivered by defendant to plaintiff, when plaintiff's deed was executed and delivered to defendant, and upon the exclusion of the affidavit executed and delivered by defendant at the time of the reconveyance. Respondents say the exhibits are ''not such written evidences of a trust which are binding in law, and they fail to meet the exacting provisions of Sec. 3494, R. S. 1939.'' However, the exhibits were offered in connection with the deeds from the respective defendants, not to show plaintiff's right to establish an express trust, but to show that defendants now have no right, title or interest in the described real estate. The exhibits were admissible as admissions against interest, since they tend to show that defendant had never had any beneficial interest in the described real estate, nor more than a bare legal title in trust for plaintiff. Brigham City Fruit Growers' Ass'n. v. G. H. Zollmann Produce Co. (Mo. Sup.), 220 S. W. 911, 918; Lareau v. Lareau (Mo. Sup.), 208 S. W. 241, 244. The exhibits tended to support the allegations of

plaintiff's petition and to show that, since the reconveyance to plaintiff, plaintiff was the owner in fee and entitled to have title quieted in fee simple in him and against both defendants, although they had executed separate deeds rather than a joint deed under the provisions of Sec. 3402, R. S. 1939. The trial court erred in excluding the exhibits, but we may consider them in determining the issues on this appeal. Webb v. Salisbury, 327 Mo. 1123, 39 S. W. (2d) 1045, 1051; Russell v. Frank, 348 Mo. 533, 154 S. W. (2d) 63, 66; Columbian National Life Ins. Co. v. Dubinsky, 349 Mo. 299, 160 S. W. (2d) 727, 732. The content of the exhibits sufficiently accords with the allegations of defendants' cross petition for us to conclude that defendants will not be "unfairly prejudiced" by such consideration. Russell v. Frank, supra. There is no contention that the documents were not signed by defendant, and no suggestion that the document of January 4, 1939 was not entirely voluntary.

We think it apparent from the face of the pleadings that both plaintiff and defendants have sought to state causes of action under Sec. 1684, R. S. 1939. Neither party demurred to the other's pleadings and the issues were tried to the court sitting as a court in equity. The same type of relief was asked by both plaintiff and defendants, to wit, that the court try, ascertain and determine the estate, title, and interest of the parties, plaintiff and defendants. Each asked the court to forever enjoin and restrain the opposite party from asserting, claiming, or setting up any right, title or interest in and to said real estate. We think the essential issue presented by the pleadings is whether the reconveyance by defendant to plaintiff was void on account of fraud, misrepresentation and duress. A secondary issue is whether, in view of the pleadings and proof, the defendant ever had a beneficial interest in the real estate to which any inchoate right of dower of his wife could attach and, if such right did attach, whether the separate quitclaim deed was sufficient to release it. The parties were attempting to try these issues.

The joint answer of defendants, expressly admitted that plaintiff had an absolute right to the net rentals from the described real estate, "after payment of necessary expenditures, repairs and taxes," and defendants prayed the court to so declare the plaintiff's interest, but the court found defendant to be the owner in fee simple. Error, therefore, appears on the face of the record. The decree, as entered, cannot stand. Friedel v. Bailey, 329 Mo. 22, 44 S. W. (2d) 9, 15; Sinclair Refining Co. v. Wyatt, 347 Mo. 862, 149 S. W. (2d) 353.

We think it conclusively appears from the pleadings and evidence of both plaintiff and defendants that the voluntary conveyance of the described real estate by the plaintiff to defendant was not intended as a gift of the beneficial interest in the property to defendant. Plaintiff was entitled to a return of the property upon demand, in accordance with the terms of the writing signed by defend-

90 ant on January 4, 1939. In the event of defendants' refusal to have returned the property, plaintiff could have sought relief in equity. Cook v. Branine, 341 Mo. 273, 107 S. W. (2d) 28, 32; Mentzer v. Mentzer, 325 Mo. 941, 30 S. W. (2d) 146, 148; Wilkerson v. Wann, 322 Mo. 842, 16 S. W. (2d) 72, 76. Defendant, therefore, is in no position to seek relief in a court of equity to have his deed set aside so that he may retain title in fee. In equity and good conscience, he should have made the reconveyance without duress, if any, being required. Defendant has no equities to be protected and is entitled to no relief. Frederich v. Union Electric Light & Power Co., 336 Mo. 1038, 82 S. W. (2d) 79, 85.

Respondents contend that the evidence is undisputed that the deed of reconveyance was procured by misrepresentation and threats and that the court correctly held it to be void. Mississippi Valley Trust Co. v. Begley (En Banc), 298 Mo. 684, 694, 252 S. W. 76. We think defendants' evidence in the case at bar is wholly insufficient to support the conclusion that defendant acted under legal duress when he executed his deed of reconveyance to plaintiff. Respondents refer to the threat to take the matter up with the Board of Police Commissioners, with possible jeopardy to his rank, as producing a profound effect of duress, impelling defendant to perform an act which was not his free act and deed. We do not so view the evidence. The burden of proof rested upon defendants to produce clear, cogent and convincing evidence that there were threats amounting, in effect, to virtual coercion and duress, which overcame the will of the defendant and rendered him incapable of freely exercising his own will power and judgment, and substituted the will of another, and that, but for such threats, he would not have executed the deed. Monroe v. Lyons, 339 Mo. 515, 98 S. W. (2d) 544, 547; Wood v. Kansas City Home Telephone Co., 223 Mo. 537, 557, 123 S. W. 6; Bell v. Campbell, 123 Mo. 1, 14, 25 S. W. 359. The cancellation of a deed is an exertion of the most extraordinary power of a court of equity, which ought not to be exercised except in a clear case and upon strong and convincing evidence. Lastofka v. Lastofka, 339 Mo. 770, 99 S. W. (2d) 46; Edinger v. Kratzer, 175 S. W. (2d) 807 (not yet reported in State Reports); Hamilton v. Steininger, 350 Mo. 698, 168 S. W. (2d) 59. The evidence was wholly insufficient to meet the degree of proof required.

Respondents insist the evidence shows that the conveyance by plaintiff to defendant "was a business arrangement, understandingly entered into by appellant as the result of business negotiations with his nephew, and supported by consideration." It will be unnecessary to decide that issue, since it further appears that, at the time the arrangement was consummated, defendant in writing recognized plaintiff's right to terminate the arrangement at any time and to have title transferred as plaintiff might direct.

█ Concerning the interest of defendant's wife, we must hold that defendant was never seized of an estate of inheritance in the described real estate and his wife never had any inchoate right of dower therein to be released by their joint deed under Sec. 3402, R. S. 1939, Mo. R. S. A. Sec. 3402. Miller v. Miller, 148 Mo. 113, 119, 49 S. W. 852, 853; Sec. 318 R. S. 1939, Mo. R. S. A. Sec. 318. Since defendant's wife had no interest, the quitclaim deed conveyed nothing, yet no ground for cancellation appears from either the pleadings or evidence. We need not determine its sufficiency to convey an inchoate right of dower in the premises, if such right had existed. See, First National Bank v. Kirby, 269 Mo. 285, 293, 190 S. W. 597.

█ While this court is inclined to defer to the finding of a trial chancellor, particularly where there is conflicting verbal testimony, involving the credibility of witnesses who have appeared before him, yet in the discharge of its duty this court must review the findings and where it appears, as here, that the findings are erroneous, we must make our own findings.

The judgment is reversed and the cause remanded with directions to enter judgment for plaintiff, quieting and determining title in fee simple in him. It is so ordered. █ *Bradley* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.