Hildegard WILSON, Appellant,

v.

Paul E. WILSON, Respondent.

No. WD 33060.

Missouri Court of Appeals,
Western District.

Nov. 9, 1982.

Carl F. Sapp, Sapp, Woods, Orr & Bley, Columbia, for appellant.

Charles W. Franklin, Columbia, for respondent.

Before NUGENT, P.J., and TURNAGE and LOWENSTEIN, JJ.

NUGENT, Presiding Judge.

Hildegard Wilson appeals from the order of the trial court which dissolved her marriage to Paul Wilson, divided the marital property and awarded child support and custody of the parties' minor daughter to Mrs. Wilson. She challenges both the trial court's finding that the couple's property at 1306 Bradshaw was marital property and not a gift to her, and the award of $125 per month for child support. We reverse as to the Bradshaw property and affirm the order of child support.

The parties were married June 5, 1965, and lived in a house on Bluffdale Drive in Columbia, Missouri, owned by Mrs. Wilson. A child, Ginger, was born in January, 1967. In 1968, the couple traded the house for the property at 1306 Bradshaw and took ownership as tenants by the entirety. Mrs. Wilson's equity in the Bluffdale property was $9,000 at the time of the trade. In May, 1977 the Bradshaw house was entirely paid off with funds held in a joint savings account to which both parties contributed.

Both parties were employed during the entire marriage with the exception of a five-month period after Ginger was born, in which Mrs. Wilson remained at home.

In 1977, Mr. Wilson suggested conveying his interest in the house to Mrs. Wilson in a quit-claim deed. He stated at trial that he did so

> because I knew it meant a lot to Hilde. She liked to say "this is mine". She liked to have her name on it. I thought the marriage was a permanent thing, I was willing to do anything to make her happy. At the same time, I also wanted her to take a more positive interest in Ginger, and I thought I could work an agreement with her, so that's it.

Mr. Wilson further testified that he did not intend to make a gift when he executed the deed. He intended to make an agreement with Mrs. Wilson that if she would pay more attention to Ginger, he would sign the property over to her. Mrs. Wilson denied the existence of such an agreement.

One year after Mr. Wilson first suggested the conveyance, Mrs. Wilson agreed and obtained the necessary deed. Mr. Wilson testified that he signed it, had it notarized, returned home with it and delivered it to Mrs. Wilson who accepted it. The deed shows it was executed July 20, 1978, and recorded July 26, 1978.

The Wilsons did not separate until 1980.

After a trial upon Mrs. Wilson's petition and Mr. Wilson's cross-bill for dissolution the trial court found on July 13, 1981, that the marriage was irretrievably broken and ordered the marriage dissolved. Mrs. Wilson was awarded custody of Ginger and $125 per month child support. The court found that the July 20, 1978, quit-claim deed "was procured by duress and coercion to-wit: A promise by petitioner that she would spend more time with minor child and was not a gift by respondent." The court ordered, *inter alia,* that the house be sold by the sheriff at public auction and the proceeds and expenses divided equally.

 In reviewing a decree of dissolution, we must affirm the trial court unless it is against the weight of the evidence, it is unsupported by the evidence, or it erroneously declares or applies the law. *Rasmussen v. Rasmussen,* 627 S.W.2d 117 (Mo.App. 1982).

In her first point on appeal, Mrs. Wilson charges that no evidence supported the trial court's conclusion that Mr. Wilson was subjected to duress and coercion, and that, therefore, the conveyance was a gift and the Bradshaw property is not marital property.

Section 452.330.3[1] provides that "all property acquired by either spouse subsequent to the marriage . . . is presumed to be marital property regardless of whether title is held individually or . . . in some form of coownership . . . ." This presumption can be overcome, however, by a showing that the property was acquired by any method listed in § 452.330.2, including by "gift, bequest, devise, or descent".[2]

 The burden was on Mrs. Wilson, then, to establish the essential elements of a gift: donative intent, delivery of the property to the donee by the donor, and acceptance by the donee whose ownership takes effect immediately and absolutely. *Gross v. Gross,* 625 S.W.2d 655, 662–63 (Mo.App. 1981). Delivery by deed to Mrs. Wilson and acceptance by her are uncontested and were, in fact, specifically conceded by Mr. Wilson in his trial testimony. The sole issue is donative intent.

Although Mr. Wilson now denies that he intended to make a gift of his interest in

---

1. All sectional references are to Revised Statutes of Missouri, 1978, unless otherwise indicated.

2. The Missouri Dissolution Act does not mention whether a gift from one spouse to another may overcome the marital property presumption. The court in *Conrad v. Bowers,* 533 S.W.2d 614 (Mo.App.1975), stated at 621 n. 10 that such a gift is not prohibited under the act. This is consistent with the rule that a valid inter vivos gift between spouses does not come to a spouse by virtue of the marriage (as do dower, homestead, statutory allowances, etc.) and hence is not forfeited in divorce. *Kidd v. Kidd,* 216 S.W.2d 942 (Mo.App.1949).

the house to his wife, his conduct speaks differently. Conduct is an enlightening ingredient in discerning intent. *In re Estate of Hoffman*, 490 S.W.2d 98, 103 (Mo.1973).[3]

Mr. Wilson testified that he conveyed the property because he was willing to do anything to make Mrs. Wilson happy and he knew ownership in her name would mean a lot to her. Although at trial he carefully avoided referring to the transaction as a gift, he made no claim that he did not intend for her to have the property, or that it was intended to be temporary, or that the deed carried any meaning other than that Mrs. Wilson was to own the property.

The only reasonable interpretation of Mr. Wilson's conduct is that on July 20, 1978, he intended to transfer the property to Mrs. Wilson. The trial court made no specific finding as to donative intent but apparently found that if any such intent did exist, it was negated by the "duress and coercion" accompanying the transfer. Our review, then, is limited to whether the evidence supports such a conclusion.

■ The cancellation of a deed is an extraordinary remedy which cannot be authorized unless it is warranted by clear, strong, and convincing evidence. *Nichols v. Wirts*, 270 S.W.2d 801, 805 (Mo.1954); *Dreckshage v. Dreckshage*, 352 Mo. 78, 176 S.W.2d 7, 14 (1943).

■ Duress, of course, may provide the basis for cancellation of a deed, but in determining whether the duress is sufficient to warrant this remedy, "the question is: was the person acted upon *by threats by the person claiming the benefit of the contract* . . . as to be bereft of the quality of mind essential to the making of the contract . . . [and] bereft of the free exercise of his will power . . . "? *Coleman v. Crescent Insulated Wire and Cable Co.*, 350 Mo. 781, 168 S.W.2d 1060 (1943) (emphasis added).

■ Threats by another, then, may constitute duress, as may "constraint or compulsion which is sufficient to overcome the will of a person of ordinary firmness and to induce him to comply with *a demand to which he would not have yielded if he had been permitted to act of his own volition.*" *Schoen v. Lange*, 256 S.W.2d 277, 282 (Mo.App.1953) (emphasis added). Whether the definition is phrased in terms of a "threat" or a "demand", then, the duress clearly must be caused by the conduct or words *of another*. Further, a claim of duress cannot generally be sustained where the alleged victim has knowledge of the facts and opportunity for investigation, deliberation and reflection. *Weisert v. Bramman*, 358 Mo. 636, 216 S.W.2d 430, 434 (1948).

■ The evidence here simply does not clearly support a finding that Mr. Wilson was subject to threats or demands from Mrs. Wilson which deprived him of his free will. The parties disagree as to whether the conveyance was made in return for a promise by Mrs. Wilson to pay more attention to Ginger, but even if we assume that such an agreement did exist, this cannot reasonably be construed as a demand *by Mrs. Wilson*. Mr. Wilson testified that *she* did not demand the conveyance in return for the promise. The idea was his. He may very well have felt a genuine need to motivate Mrs. Wilson to alter her behavior toward the child, but internal pressures, personal desires or a sense of obligation simply do not constitute legal duress. If deeds or contracts could be voided for such reasons, however noble or warranted those reasons may be, very few contracts would be binding.

Further, Mr. Wilson testified that after he first suggested the conveyance in 1977, Mrs. Wilson waited a year before agreeing. Certainly one year was ample time for deliberation, reflection and investigation by both parties. We can hardly conclude that he was "railroaded" into the transaction.

We hold, therefore, that Mr. Wilson has failed to meet his burden of producing

---

3. *See also Hathman v. Waters*, 586 S.W.2d 376, 382 (Mo.App.1979), where this court held that a husband's appropriation of funds from a joint account with full knowledge and acquiescence of the wife constituted a gift.

clear, strong and convincing evidence of duress. The conveyance satisfies all the requirements of a gift, and is therefore, not marital property. The judgment of the trial court ordering the sale of the house on Bradshaw and the equal division of the proceeds and expenses is reversed and the house is set over to Mrs. Wilson as her sole and separate property.

■ In her second point on appeal, Mrs. Wilson argues that the trial court abused its discretion in awarding her only $125 per month in child support, particularly when her house was ordered sold and the proceeds divided between the parties. Because of our holding on her first point, the sale of the house is no longer of concern. In addition, we note that the trial court has considerable discretion in setting awards of child support. We cannot substitute our judgment for that of the trial court absent a manifest abuse of discretion. *Wade v. Wade,* 429 S.W.2d 317 (Mo.App.1968).

The parties disagree as to whether Mr. Wilson's take home pay is actually $1,010.98 (as he claims) or closer to $1,300 (as Mrs. Wilson claims). Mrs. Wilson asserts error in the trial court's failure to add back to Mr. Wilson's income the $297 claimed by him in monthly expenses for children in his custody when in fact no children are now living with him. Her point is well taken. We find, however, that whether the trial court considered his income to be $1,010 or $1,300 per month (and the court did not indicate on which figure it based the award), we cannot say that $125 per month is a manifest abuse of discretion. The award of child support must be affirmed.

Accordingly, the trial court's order is reversed in part and affirmed in part.

All concur.