LONG'S MARINE, INC., A Missouri
Corporation, Plaintiff–Appellant,

v.

James L. BOYLAND, Individually and as a
Director and Officer of Sharp's Inland
Marina, Inc., Vista E. Boyland, Individu-
ally and as a Director and Officer of
Sharp's Inland Marina, Inc.,

and

Sharp's Inland Marina, Inc., A Missouri
Corporation, Defendants–
Respondents.

No. 65871.

Missouri Court of Appeals,
Eastern District,
Northern Division.

June 20, 1995.

Branson L. Wood, III, Hannibal, for plain-
tiff-appellant.

Randall P. Baker, Leonatti & Seigfreid,
Mexico, for defendants-respondents.

KAROHL, Judge.

Long's Marine Inc. sued defendants James
Leo Boyland, Vista E. Boyland and Sharp's
Inland Marina, Inc. to recover damages aris-
ing out of business transactions between the
parties in 1988 and 1989. Count I of the
Second Amended Petition asserted damages
as a result of fraud, or economic duress, or
business compulsion. Count II repeated the
assertions in Count I and added a claim for
punitive damages. Count III asserted a
cause of action for violation of the Uniform
Securities Act, § 409.411 RSMo 1986. The
trial court sustained defendants' "motion" to
dismiss Count III for violation of the securi-
ties regulations.[1] Plaintiff voluntarily dis-
missed the claims against defendant, Sharp's
Inland Marina, Inc. without prejudice. On

---

1. Actually, there was no motion to the trial court regarding Count III of the Second Amended Petition. The securities claim, Count I in the First

Amended Petition, alleged defendants violated § 409.101 RSMo 1986. In the absence of a motion we cannot know the reason for dismissal.

Count I and Count II, trial court granted a directed verdict for Vista E. Boyland at the close of plaintiff's evidence. At the close of all of the evidence, it entered a directed verdict in favor of James Leo Boyland on Counts I and II. Long's Marine, Inc. appeals dismissal of Count III and directed verdicts on Counts I and II.

In 1986, Earl N. Long, Jr. (Long), bought the inventory and assets of a boat dealership. He separately purchased real estate on which to conduct the business. He later incorporated the business as Long's Marine, Inc. (Long's, Inc.). The business was unprofitable and strained him financially. Long decided to sell the dealership and land in late 1987 or early 1988. In May and June of 1988, Long negotiated with Sharp's Inland Marina, Inc. (Sharp's, Inc.) about purchasing the business. Defendants, James Leo Boyland (Lee) and Vista E. Boyland (Vista) were shareholders in Sharp's, Inc. The negotiations were not successful. On June 28, 1988, Long signed a letter of intent with Sharp's, Inc. The letter outlined the relocation of the assets and inventory of Long's, Inc. onto the property of Sharp's, Inc. It also listed conditions to be met by both parties. A proposed closing date was set for October 31, 1988. On July 6, 1988, Long sold the land separately to Abel Oil Company.

On October 26, 1988, Long's attorney sent a letter to Sharp's, Inc. expressing his concerns that the closing would not take place as proposed. Long stated he was prepared to proceed with the closing and would not agree to any extensions. On the suggested closing date the condition that both parties prepare an inventory of assets of Long's, Inc. had not been met. Lee and Vista Boyland refused to close. The parties continued to conduct business together under the agreements set up in the June 28, 1988, letter of intent. They continued to negotiate. Long requested a cash settlement for the assets and inventory of Long's, Inc. Vista and Lee offered an exchange of shares of stock in Sharp's, Inc. for the assets and inventory of Long's, Inc. On April 21, 1989, Long entered into an agreement with Sharp's, Inc. to exchange the assets and inventory of Long's, Inc. for 100 shares of Sharp's, Inc. stock.

Long asserts three points on appeal. He contends: (1) the trial court erred in dismissing Count III alleging a violation of the Missouri Securities Act, § 409.411 RSMo 1986; (2) the trial court erred in directing a verdict at the close of all of the evidence for Lee Boyland because the evidence was sufficient to submit Counts I and II for fraud, or economic duress, or business compulsion; and (3) the trial court erred in directing a verdict for Vista Boyland at the close of the plaintiff's evidence on Counts I and II because plaintiff proved her charged conduct individually, or as an aider and abetter of Lee Boyland.

■ Long argues the trial court erred in dismissing Count III which alleged defendants omitted and misstated material facts pursuant to the sale of securities. Long asserts the corporation's cause of action is authorized under the civil liabilities section of the Missouri Securities Act, § 409.411 RSMo 1986. Specifically, the sale of securities is defined to include "every contract of sale of, contract to sell, or disposition of, a security or interest in a security for value." Section 409.401(j)(1) RSMo 1986. However, Subsection (j)(6)(C) explicitly excludes from this definition:

> [A]ny act incident to a class vote by stockholders, pursuant to the certificate of incorporation or the applicable corporation statute, on a merger, consolidation, reclassification of securities, or sale of corporate assets in consideration of the issuance of securities of another corporation; ....
> Section 409.401(j)(6)(C) RSMo 1986.

The plain and ordinary meaning of words must be applied when construing a statute. *Conagra Poultry Company v. Director of Revenue*, 862 S.W.2d 915 (Mo banc 1993). Long entered into a contract with Sharp's, Inc. on April 21, 1989. He signed an agreement to exchange all of the inventory and assets of Long's Marine, Inc. for 100 shares of stock in Sharp's, Inc. This constituted an exchange of corporate assets for the securities of another corporation. The Missouri Securities Act, § 409.401(j)(6)(C), specifically exempts the exchange of assets of one corporation for shares of stock in another. The trial court's order to dismiss the Missouri

Securities Act § 409.411 RSMo 1986, claim was not error.

■■■ The trial court entered directed verdicts in favor of defendants on Counts I and II which may allege a claim of fraud, or economic duress, or business compulsion.[2] Long contends the corporation presented sufficient evidence of economic duress or business compulsion to submit the claim to the jury. We review such verdicts by considering the facts and favorable inferences in the light most favorable to plaintiff's claims. *Davis v. City of Kinloch,* 752 S.W.2d 420 (Mo.App.1988). In order to avoid a contract with a claim of economic duress the claimant must reveal oppression from the wrongful conduct of another that deprives them of free will. *Schmalz v. Hardy Salt Co.,* 739 S.W.2d 765, 768 (Mo.App.1987). The question of whether or not the defense of duress is available is a question of law, not of fact. *Id.* Long asserts Lee and Vista committed a wrongful act in refusing to follow through with the letter of intent and complete the contract on October 31, 1988. However, both parties failed to comply with material provisions set out in the letter of intent. Specifically, neither party completed the inventory required prior to closing the deal. Long's position fails because he also failed to meet a material requirement of the deal. *Id.* Long neither pleaded nor proved breach of contract.

■■■ Long asserts Lee and Vista knew of his financial situation and wrongfully exploited his financial problems. The business Long purchased in 1986 was unprofitable. He reported a loss every year on his income tax returns. He wanted to sell the real estate and dealership and return to farming. He chose to sell the land before he had a contract to sell his interest in Long's, Inc. His own letter of intent may have given him false security that he could safely complete the sale of the real estate that he owned individually. He moved the corporate inventory to Sharp's, Inc. and continued the business. He anticipated the sale of the business could be completed with Sharp's, Inc. in accordance with his letter of intent.

Long argues Lee and Vista manipulated him into a vulnerable position in order to negotiate a better deal. He argues they violated his trust, laughed about his financial position and planned to "tighten the screws" against him. Even if true, these actions by Lee and Vista do not constitute actionable wrongful conduct on their part. Long chose to sell his real estate prior to completing the sale of the business. He signed a letter of intent and moved the assets of the corporation to reduce its losses and continue the business until a final sale could be completed. The financial necessity of a party, not caused by the other contracting party, does not constitute duress. *Schmalz,* 739 S.W.2d at 768. The evidence will not support a finding that either Lee or Vista had control over the events leading to Long's financial problems. They did not force Long to sell his real estate or move Long's, Inc. before a sale contract was finalized. Long created his own financial crisis through his own bad business decisions.

A cause of action for duress requires the plaintiff show that he was so oppressed that he was deprived of his free will. *Schmalz,* 739 S.W.2d at 768. Long had legal counsel who drafted documents and was aware of the negotiations. Some four or five drafts of the purported contract under duress were reviewed and negotiated by Long, his counsel, Lee and Vista. The evidence does not reveal the eventual sale for shares of stock was the product of duress. *Wilson v. Wilson,* 642 S.W.2d 132, 135 (Mo.App.1982).

In addition, Long did not immediately repudiate the exchange of Long's, Inc. assets for 100 shares of Sharp's, Inc. The exchange was agreed to by Long's Marine, Inc. and Sharp's Inland Marina, Inc. in a written contract dated and executed April 21, 1989. This was the only contract ever agreed to by the parties. After the exchange in April 1989, Long continued to use Sharp's, Inc. facilities to sell some of his retained inventory. This arrangement continued until a fire

**2.** We assume, without deciding, a corporation can assert a cause of action for business compulsion.

destroyed the facilities in October of 1989. An individual who acquiesces for a considerable time after entering into a contract and accepts its benefit is deemed to have ratified it. *Id.; Weisert v. Bramman,* 358 Mo. 636, 216 S.W.2d 430 (banc 1948).

We affirm.

GRIMM, C.J., and WHITE, J., concur.