HENRY BRISCOE et al., Respondents, v. FRED LAUGHLIN, Appellant.

**Kansas City Court of Appeals, January 22, 1912.**

1. **ANIMALS: Vicious Dogs: Damages: Instruction.** An instruction, in an action for damages for killing a dog which was on defendant's farm and about to attack his sheep, which left to the jury to say whether the act of defendant was wrongful and without good cause, is erroneous.

2. ———: ———: ———: ———. Where a dog, while unattended, was chasing sheep, or threatening to do so, on the farm of the owner of the sheep, the latter had a right to cause it to be killed.

3. ———: ———: ———. Under the laws of this state, dogs are held and considered to be property, and, as such, are entitled to the same protection and consideration as other property.

Appeal from Bates Circuit Court.—*Hon. C. A. Denton*, Judge.

REVERSED AND REMANDED.

*Silvers & Silvers* for appellant.

*W. O. Jackson* and *Silvers & Dawson* for respondents.

BROADDUS, P. J.—This is an action to recover damages for the killing of plaintiff's dog. The answer of defendant consisted of a general denial and for further defense as follows: "Further answering, defendant states: That the plaintiffs are the owners of a pack of dogs, of which the dog described in the petition was one, that had for some time prior to the killing of the dog described in the petition, been engaged in chasing and killing the sheep of the defendant on his farm in Bates county, Missouri. That the dog which was shot, was at the time on defendant's

farm, and had been recently engaged in chasing and killing sheep belonging to defendant, and at the time it was shot and killed was discovered on defendant's farm aforesaid, in close proximity to defendant's sheep on said farm, and was sneaking and crouching toward defendant's ewes kept for breeding purposes, with every indication that it intended to kill some of said sheep, and while thus engaged, on defendant's premises, and several miles from the premises of plaintiffs, was killed.''

The plaintiffs filed a general denial of the allegations of the matter of defense in defendant's answer, and further substantially to the effect, that they had prior to the time when the dog was killed, made an arrangement or agreement with defendant whereby the dogs of plaintiffs were to be permitted to run at large on defendant's premises, and that if any damage was done by such dogs while engaged in running at large on defendant's premises plaintiffs were to pay double damages, and that the defendant was not to kill the dogs of plaintiffs.

The undisputed facts are that the plaintiffs and defendant lived on farms about seven miles distant from one another; that the plaintiffs were the owners of about fifteen hounds, among which was the one in controversy; that these dogs were kept for the purpose of chasing wolves that infested the neighborhood; and that defendant was engaged in raising sheep on his farm. It was shown that the defendant did not kill the dog, but that it was killed by a man in his employ and that he was authorized by defendant to do so, as he had a standing offer to pay $2 for every dog that was killed on his farm. It was admitted that defendant gave plaintiffs permission to hunt wolves with dogs on his farm, but the parties differ as to the extent of the permission. The plaintiffs contend that it was part of the agreement that if their dogs did defendant any injury they were to compensate him

therefor in double damages. The defendant's contention was that the permission was given for the dogs to chase wolves on his farm only when accompanied by the owners.

According to defendant's evidence, the dog was alone and seemed to be approaching defendant's sheep in such a manner as to indicate that he was going to attack them when he was shot and killed. There was testimony to the effect that some of defendant's sheep had been killed by animals of some kind, and that during the past year plaintiffs' dogs had been running some of defendant's stock, but there was no direct evidence tending to show that they had killed any of his sheep. Some had been killed, but it was not shown whether they had been killed by dogs or wolves. But there is evidence that they had chased the sheep of other persons and would have caught them had they not been interferred with. Defendant offered to show by a witness that he heard dogs in his pasture one night and that on the same night he lost some sheep that had been killed by dogs, upon objection, the offer was excluded.

E. Laughlin, defendant's brother, testified that plaintiffs' dogs had chased sheep on his premises. He was asked if at a certain time that he had not expressed the belief that the dogs had been of value to him. He said not. Respondent was called and testified over defendant's objection that he had so expressed himself to him. Some unimportant and irrelevant testimony was offered by defendant and rejected by the court, and other competent evidence not herein noted was received by the court over defendant's objections. The value of the dog was proved by a number of witnesses. The jury returned a verdict for the plaintiff in the sum of $32.25. From the judgment defendant appealed.

Three instructions were given for the plaintiffs, all of which the defendant challenges as not stating

the law of the case. Those given at the instance of defendant we think properly declared the law upon his theory of the case. Instruction 1 for plaintiffs is as follows: "The court instructs the jury that if they find and believe from the evidence that defendant directed or induced Hubert Keith, while in the employ of defendant, to kill plaintiffs' dog, such act was the act of the defendant; and if they further find and believe from the evidence that such act was wrongful and done without good cause, then your verdict should be for the plaintiff, in such sum as you shall believe from the evidence the dog was reasonably worth at the time of the killing." The criticism to the instruction is that it left to the jury to determine as a question of law what was wrongful and without good cause. The instruction is certainly defective in the respect mentioned. But respondents contend that the defect was remedied by instruction 4 given for plaintiffs and by those given for defendant.

Instruction 1 was certainly defective because it left to the jury as a question of law to say whether the act of defendant was wrongful and without good cause. Usually, use of the words could do no harm as a jury would readily understand their purport. But here the words were entirely inappropriate unless their meaning was defined, for they related to the real issue of the case, that is to say, did the defendant kill or cause the dog to be killed while he was chasing or threatening to chase defendant's sheep, and if he was, whether the act was or was not wrongful and without good cause under the pleadings. The plaintiffs' reply being to the effect that defendant under the agreement had no right to kill the dog whether he was chasing sheep or not, while defendant's pleading was that he had the right to kill the dog notwithstanding the agreement, as it did not preclude him from killing it, if it was found chasing sheep while unattended by plaintiffs. Instruction 4 given for plaintiffs did not cure the defect. In

fact, it made it worse, if possible. It told the jury if they found that defendant shot or caused the dog to be shot, "and that prior thereto he had an arrangement with plaintiffs that their dogs should run on his premises, and if they did any damage they would pay him double the damage done by the dogs," then the jury should find for plaintiffs. This instruction presented a false issue to the jury. Notwithstanding plaintiffs pleaded such contract, it was not sustained by the evidence. It was only shown that defendant agreed that plaintiffs might chase wolves on his farm with their dogs, not that they were to be permitted to chase wolves on his farm unattended. Whereas the issue was one presented by the plaintiffs' pleading it was not sustained by any evidence and was in that respect misleading.

The defendant's instructions presented the case to the jury on the theory that if plaintiffs' dog, while unattended, was chasing his sheep or threatening to do so, he had a right to cause it to be killed. The two sets of instructions are irreconcilable and that of plaintiffs misleading and not applicable to the facts shown in the evidence.

No 6 given for plaintiffs is also objected to by defendant. It reads as follows: "The court instructs the jury that under the laws of this state dogs are held and considered to be property, and, as such, are entitled to the same protection and consideration as other property." This instruction should not have been asked or given. It was wholly unnecessary even if it had contained a proper declaration of the law. There was no dispute between the parties as to whether or not dogs were recognized by the law of the state as property. It was not such an error, however, standing alone, that would authorize a reversal.

The admission of the evidence for impeaching E. Laughlin was incompetent because it was not incon-

sistent with his evidence before the jury. Other objections to the admission and rejection of evidence we do not think are well taken. For the errors noted the cause is reversed and remanded. All concur.