LESLIE J. MEYER, RESPONDENT, v. EDWARD WEBER, DOING BUSINESS AS GRAND-ST. LOUIS GARDEN, APPELLANT.—109 S. W. (2d) 702.

St. Louis Court of Appeals. Opinion filed November 2, 1937.

*Frank Coffman* and *Julius J. Fuchs* for appellant.

*Charles M. Ryan* for respondent.

McCULLEN, J.—This is a suit for damages for alleged breach of a contract. It was originally begun before a justice of the peace and

thereafter appealed to the circuit court of the City of St. Louis where there was a trial before the court and a jury which resulted in a verdict and judgment in the sum of $599.80 for respondent, who will be referred to herein as plaintiff. Appellant will be referred to as defendant. In due time defendant filed a motion for a new trial, which being overruled he brings the case to this court by appeal.

Plaintiff's petition alleges that defendant was engaged in business under the name of Grand-St. Louis Garden at Grand and St. Louis Avenues in the City of St. Louis, Missouri; that on May 18, 1933, he and defendant entered into a written contract, filed with the petition as exhibit A; that by said contract plaintiff agreed to furnish to defendant four musicians members of the Musicians Mutual Benefit Association, for a period of five weeks from May 18, 1933, ending and including June 21, 1933; that defendant thereby agreed to pay plaintiff $136 per week, payable weekly, for such services; that plaintiff duly performed all the conditions of said contract on his part to be performed and furnished said four musicians from May 18, 1933, until June 1, 1933, on which date defendant prevented plaintiff from further carrying out said contract and wrongfully and without just cause discharged the four musicians from said employment; that plaintiff was ready and willing to carry out the terms and provisions of said contract but defendant refused to permit him to do so for the remainder of the term thereof. Plaintiff prayed judgment for $544 with interest from June 21, 1933.

Defendant in his answer denied specifically that he entered into a written contract with plaintiff on May 18, 1933, or at any other time, denied that he was engaged in business under the name of Grand-St. Louis Garden, denied each and every allegation in plaintiff's petition "not herein otherwise specifically denied," and further answering, "not admitting any of the allegations in plaintiff's petition, or their legal sufficiency, but, on the contrary, denying the same defendant alleges that even if he had executed said contract, which he denies, namely $136 per week, was, and still is, a mere recital in said contract."

The written contract was introduced in evidence by plaintiff, who testified that it was signed by himself and by defendant on May 18, 1933. It is as follows:

"The undersigned party of the first part and second part, respectively, agree as follows:

"The party of the first part hereby agrees to furnish ———— Four ———— Musicians, members of MUSICIAN'S MUTUAL BENEFIT ASSOCIATION.

"As Their Agent, to party of the second part, for $136.00 Dollars per week for entire 5 weeks commencing May 18, 1933, to June 21, 1933, at Grand-St. Louis Garden, Grand & St. Louis, St. Louis, Mo.

"Service to consist of 5 Sessions each week.

"Time of service: 21 hrs. per week divided into Five sessions. All sessions to commence at 9:00 P. M.

"As the Musicians engaged under the stipulations of this contract are members of the American Federation of Musicians, nothing in this contract shall ever be so construed as to interfere with any obligation which the musicians owe to the American Federation of Musicians by reason of their prior obligations to the American Federation of Musicians as members thereof.

"This contract is subject to the rules and regulations prescribed in Price List of M. M. B. A., Section 11, attached hereto and made a part of this contract.

"Two weeks' notice must be given prior to the closing of the above contracted season.

"In case the party of the second part shall lease, assign, sell or dispose of in any way the above place of amusement, or the management hereof be changed in any manner, the party of the second part shall still be liable for the whole term of this contract, or any unexpired part of same, unless said contract be assumed by the new party, or parties, and such transfer or change with said assumption is approved in writing by said party of the first part, and countersigned by the Recording Secretary of M. M. B. A. Local No. 2, A. F. of M.

"This contract is not legal unless filed and approved by the Board of Directors and countersigned by the Recording Secretary of the M. M. B. A. Local No. 2, A. F. of M.

"The party of the second part agrees to fulfill provisions of above."

The contract bears the signature of plaintiff as party of the first part, and "Grand-St. Louis Garden, E. Weber, Mgr., Party of the Second Part." It also bears the signature of the Recording Secretary of the M. M. B. A., called Musicians' Union.

Plaintiff testified that prior to the execution of the written contract he had a conversation with defendant who told him that he, defendant, owned the building and garden; that the four musicians, of which he was one, played music at the garden for two weeks and one day; that a dispute then arose between plaintiff and defendant as to the amount to be paid for the services; that they had been paid $136 representing one week's salary, which was paid by defendant who gave plaintiff two checks made by the Weber Auto Loan Co. payable to the order of plaintiff, dated May 26, 1933, one in the sum of $86 and the other in the sum of $50; that the checks were given to him by defendant in the Grand-St. Louis Garden; that at the end of the second week, he and the other musicians did not receive anything but they played one day more, for which they were not paid, making a total of $162 then due for services actually rendered. Plaintiff further testified that he offered to render the services for the balance of the term

of the contract but defendant told him to ''Get out and stay out;'' that the value of the services under the terms of the contract for the remainder of the term was $382, which, with the unpaid balance for services actually rendered, made a total of $544 at the termination of the period of the contract.

Plaintiff further testified that after he and the musicians had played the second week, defendant offered him $48 for the week and plaintiff told him he was to get $136 for that period.

Dorothy Dawson testified for defendant that she was bookkeeper and cashier for the Weber Auto Loan Co., a corporation, whose office is located at 3540 North Grand Avenue, which was the Grand-St. Louis Garden; that she made deposits for the Weber Auto Loan Co. and that defendant was manager there.

Defendant did not testify in the case.

During the cross-examination of plaintiff by defendant's counsel, plaintiff was asked if it wasn't true that at the time the contract was signed he had the amount of $136 per week inserted for the purpose of satisfying the Union's rule and that that amount was not and never was the real agreement as to the consideration for the musicians' services. Plaintiff objected on the ground that there being no charge of fraud, accident or mistake as to the execution of the writing, evidence of prior oral conversations to vary, alter or change the terms thereof was inadmissible. The court sustained this objection, whereupon defendant, out of the hearing of the jury, offered to show by cross-examination of plaintiff that instead of the contract price being $136 per week it was $86 per week and that such contract, which was actually entered into between them caused and induced defendant to sign the written contract on behalf of the Weber Auto Loan Co. and that it would never have been signed had such an agreement not been made; that plaintiff at that time represented to defendant that he only wanted the contract signed for the purpose of showing same to his local union and for no other purpose.

Defendant further stated that he made the offer of proof for two purposes, first, to show what induced him to sign the written contract; that such written contract was never actually made, and second, that the thing that the offered evidence would vary was merely the consideration that was to be paid for the services rendered and was not contradictory of the other things in the contract. Plaintiff objected to the offer of proof on the ground heretofore stated, and further that such evidence was not admissible under defendant's answer. The court sustained plaintiff's objections. Defendant assigns as error the action of the trial court in so ruling.

Defendant's answer did not allege that the written contract was executed as the result of fraud, accident or mutual mistake. It has been held that in the absence of a charge of fraud, accident or mistake

in the execution of a written contract, parol evidence is not admissible to vary or change the terms thereof, where the contract shows on its face that it includes the entire agreement and that all prior and contemporaneous oral agreements are merged in the written contract. [J. B. Colt Co. v. Cregor, 328 Mo. 1216, 44 S. W. (2d) 2.] It has also been held that an oral agreement made contemporaneously with a written contract covering the same matter is merged therein and a breach of the oral promise does not constitute fraud. [England v. Houser, 178 Mo. App. 70, 163 S. W. 890.]

Defendant argues, however, that the rule against permitting parol evidence to vary the terms of a written contract is subject to two well known exceptions, one of which is that where the named consideration is a mere recital and is not contractual, it is open to explanation to determine what the real consideration was, and that another exception is that where a contemporaneous or a prior parol agreement induced the signing of the written contract that may be shown by parol evidence, and that this case falls within both exceptions. We are unable to agree with defendant as to this point. The written contract shows on its face that a certain specified amount was to be paid in the future by defendant for the services to be rendered in the future by plaintiff and his fellow musicians. The amount of money named in the written contract was not a mere recital of a fact of something done, such as the acknowledgment of the receipt of a payment in a written contract. If it were merely such a recital, it would, of course, be open to explanation by parol evidence, but it is clear that the amount named in the agreement herein was one of the main terms of the contract itself. It was a complete contract for something to be done in the future. It expressed all the obligations assumed by the parties thereto and was of the very essence of the contractual relation assumed by the parties to each other when they signed it. [J. B. Colt Co. v. Gregor, *supra*; England v. Houser, *supra*; Fischman-Harris Realty Co. v. Kleine (Mo. App.), 83 S. W. (2d) 605.] Furthermore, the allegation in defendant's answer that the consideration named in the contract was a mere recital was not the statement of any issuable fact or facts. It was a mere conclusion of law stated by the pleader. Without that conclusion of law, defendant's answer consisted of mere denials with no affirmative defense pleaded.

We think the court ruled correctly in refusing to permit defendant to show that he signed the written contract because, as he offered to prove, he was induced to do so by an oral agreement made at the time the written contract was executed, and that the written contract providing for the $136 per week for the entire period covered was executed for the purpose of deceiving the union of which plaintiff was a member.

In Supreme Lodge K. P. v. Dalzell, 205 Mo. App. 207, 223 S. W. 786, it was held by this court that a party will not be permitted to show by parol evidence that he executed a written contract but that it was a mere sham not intended to express the real agreement between the parties and that the real agreement was one contemporaneously or previously made by parol inconsistent with the writing.

Defendant relies upon the case of Craig v. Koss Const. Co. (Mo. App.), 69 S. W. (2d) 964, in support of his argument that this case falls within an exception to the general rule against the admissibility of parol evidence to vary the terms of a written agreement. We have carefully read the case mentioned and are unable to see wherein it can be said to be applicable in support of defendant's contention in the case at bar. Defendant herein, by his cross examination of plaintiff and offer of proof, was not attempting to show a collateral agreement between himself and plaintiff, nor was he attempting to show an additional consideration. He was trying to show that there was an oral agreement which was entirely different from and in conflict with the written contract with respect to the amount which appeared in the written contract. In the Craig case, *supra*, the defendant therein specially pleaded that it had to go upon the open market and purchase materials needed on account of the failure of plaintiff to furnish them as required and that plaintiff had, by a verbal agreement, released the defendant therein from any claims which plaintiff might have on account of a prior job in consideration of defendant giving to plaintiff therein a contract to furnish materials for another and later job. In that case the court properly held that the defendant therein could show such additional consideration for the later contract which was not in conflict with the expressed consideration in the writing. This is clearly shown by the language of the court itself wherein it said:

"It is therefore our opinion that the trial court committed error in ruling out the parol evidence offered in this case by which defendant attempted to prove an additional consideration for the material contract other than and *in addition to but not in conflict with the expressed consideration in said written contract.*" [Craig v. Koss Const. Co., *supra*, l. c. 968.] (Italics ours.)

Defendant cites the case of Sprague v. Rooney, 104 Mo. 349, and several decisions of the Supreme Court prior thereto, in support of its contention herein. The Sprague case was expressly overruled by the Supreme Court itself in McDearmott v. Sedgwick, 140 Mo. 172, 182, 183, 39 S. W. 776.

The rule applicable to the situation which we are considering is, we think, accurately and carefully stated in 10 R. C. L., section 238, page 1044, as follows:

"The rule permitting the true consideration of written contracts to be inquired into by parol evidence does not apply where the statement in the contract as to the consideration is more than a mere receipt or acknowledgment of payment, and is of a contractual nature. If the consideration is expressed merely as a recital of a precedent or contemporaneous fact, parol evidence is receivable to prove that the recited fact is untrue, and that the recited consideration has not been paid at all, or has been paid on a different account; *but if the instrument states a contractual consideration, parol evidence is not admissible to vary or contradict the consideration expressed.*" (Italics ours.)

It is obvious that the statement in the written contract in the case at bar of the amount to be paid for the services to be rendered was not a mere receipt or acknowledgment of payment but is the statement of a contractual consideration. We are of the opinion that the trial court ruled correctly on this point.

Defendant next complains that the court committed reversible error in giving instruction No. 2 on behalf of plaintiff. The instruction covered the entire case and directed a verdict if the jury found from the evidence the facts hypothesized therein. Among other things, it told the jury that if they found that defendant "wrongfully and without just cause discharged said four musicians," their verdict should be for plaintiff.

Defendant contends that the instruction left to the jury the matter of determining as a question of law what "a wrongful and without just cause" discharge was, and further that it gave to the jury a roving commission to determine in their own minds, without regard to law or fact, whether defendant's alleged discharge of plaintiff was "wrongful or without just cause." We are unable to agree with defendant on this point. Defendant did not contend at the trial that he was justified in discharging plaintiff and the other musicians. He introduced no evidence whatsoever to that effect. His defense was that he never did make the written contract upon which plaintiff sued. Hence, justification for the discharge was not an issue in the case. It has been held that it is not necessary to a plaintiff's right of recovery to prove that he was discharged without good cause and that he does not assume the burden of proving such fact even though he alleged it in his petition. Plaintiff made a *prima facie* case by showing that he performed his part of the contract up to the time he was prevented by defendant from continuing to perform the same, and by showing his readiness to comply with the terms of the contract, but was prevented from doing so by defendant. The burden was then on defendant, if he claimed that he was justified in discharging plaintiff and the other musicians, to show that the discharge was for good cause. [Haxton v. Gilsonite Const. Co., 134 Mo. App. 360, 114

S. W. 577; Vernon v. Rife (Mo. App.), 294 S. W. 747, 750.] The cases cited by defendant on this point in support of this contention are not applicable.

In Briscoe v. Laughlin, 161 Mo. App. 76, 143 S. W. 65, cited by defendant, the court was called upon to determine whether or not the words "wrongful and done without good cause" in an instruction given for plaintiff therein was error. In that case the court held that the instruction was erroneous because of the failure to define the words mentioned, but that holding of the court was based clearly upon the facts and issues in that particular case, which were quite different from the facts in the case at bar. There the court said:

*"Usually, use of the words could do no harm as a jury would readily understand their purport.* But here the words were entirely inappropriate unless their meaning was defined, for they related to the real issue of the case, that is to say, did the defendant kill or cause the dog to be killed while he was chasing or threatening to chase defendant's sheep, and if he was, whether the act was or was not wrongful and without good cause under the pleadings." [Briscoe v. Laughlin, 161 Mo. App. 76, 79, 143 S. W. 65.] (Italics ours.)

In the other case relied upon by defendant, Barree v. City of Cape Girardeau, 132 Mo. App. 182, 112 S. W. 724, plaintiff sued for damages for injuries inflicted upon him when he was arrested by an officer of the defendant city. The facts showed that plaintiff had been arrested and injured at the same time. One of the real and decisive issues of the case was whether or not planitiff was engaged in a wrongful act at the time of his arrest and injury. An important element in the defense of the defendant city was to show that the act of its officer in arresting plaintiff was justified. In view of such facts and such issues in the case, the court, of course, held that it was proper to define the words "wrongful act" and "wrongdoings."

It is clear that under the facts in evidence and the issues presented in the case at bar, the jury could not possibly have been misled by the failure of the trial court to define what constituted a "wrongful and without just cause" discharge.

We find no reversible error in the case and the judgment is therefore affirmed.

*Becker, J.,* concurs; *Hostetter, P. J.,* absent.