# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3519

_____

| | | |
|---|---|---|
| Stone Motor Company, | * | |
| | * | |
| Appellant, | * | Appeal from the United States |
| | * | District Court for the Eastern |
| v. | * | District of Missouri |
| | * | |
| General Motors Corporation, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: April 15, 2002
Filed: June 10, 2002

_____

Before BOWMAN, RILEY, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

The present dispute stems from a 1995 Chevrolet-Geo Dealer Sales and Service Agreement between franchisor General Motors Corporation (GM) and franchisee Stone Motor Company (Stone Motor). In 1997, after two years of disappointing vehicle sales, Stone Motor elected to sell its dealership and franchise. According to Stone Motor, the dealership failed because GM provided an insufficient number of vehicles and withheld better-selling models. In 1999, approximately two years after the sale, Stone Motor instituted the present suit against GM alleging fraud, breach of

contract, *prima facie* tort, and violation of the Missouri Motor Vehicle Franchise Practices Act, MO. REV. STAT. § 475.825.1 *et seq.* (MVFPA).

GM originally moved to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6). The district court granted GM's motion to dismiss regarding the fraud, tort, and statutory claims. Thereafter, GM filed an answer in which it asserted a defense based on a written release. Stone Motor referenced the release in the original complaint, but GM did not have a copy of the release when filing the answer. Following receipt of the release through discovery, GM moved for judgment on the pleadings. Before the district court ruled on GM's motion for judgment on the pleadings, GM filed a motion seeking summary judgment on the remaining claim for breach of contract. GM reasserted the release defense in its summary judgment motion. The district court granted summary judgment without addressing the validity of the release.

Stone Motor appeals the district court's dismissal of the statutory claims and grant of summary judgment, but not the dismissal of the fraud or *prima facie* tort claims. For the reasons discussed below, the grant of summary judgment and dismissal of statutory claims are reversed, and the case is remanded to the district court to conduct the factual findings necessary to determine the validity of the release.

I

In 1995 Stone Motor purchased a Cuba, Missouri, Chevrolet-Geo dealership and franchise. Prior to the purchase, Stone Motor received inflated historical sales data from the selling franchisee. Stone Motor purchased the dealership in reliance on this inflated data and based sales projections for its franchise application on this data. GM received and approved the franchise application without notifying Stone Motor that the historical figures were inflated. The failure to correct Stone Motor's own sales projections served as the foundation for Stone Motor's now-dismissed fraud

claim. Although Stone Motor did not receive notice regarding the inflated data, GM did send a letter to Stone Motor advising that the dealership facilities were substantially larger than facilities for area dealerships having similar sales volume. In the letter, GM further advised that this heightened capacity would not create an entitlement to extra inventory.

On September 27, 1995, GM and Stone Motor executed an agreement and a separately signed, preamble document. The preamble document contained recitations that described the parties' general goals and objectives. The agreement recognized that GM had a duty to allocate vehicles among its various dealers and reserved to GM broad and sole discretion in the selection and allocation of vehicles to Stone Motor. The agreement did not articulate any quotas or impose on GM a duty to provide any particular mixture of vehicle models.

After commencing operations under the agreement, GM provided more vehicles to Stone Motor than it had provided to the prior franchisee. However, GM did not provide as many vehicles as Stone Motor desired. Further, as a percentage of the vehicles provided, GM did not provide trucks and sport utility vehicles at the levels desired by Stone Motor. Finally, Stone Motor identified instances wherein GM delayed in filling orders, refused to fill an order, or advised Stone Motor to refer a customer to a different GM dealer. As a result of the dealership's poor economic performance, Stone Motor elected to sell the dealership and franchise to a dealer in a nearby town. GM approved the sale of the franchise.

On July 14, 1997, at the closing for the sale of Stone Motor's dealership and franchise, Virgil Stone, individually and in his capacity as the president of Stone Motor, signed a release of all claims against GM. The release recited as consideration "the sum of One Dollar ($1.00) in hand paid by General Motors Corporation, Chevrolet Motor Division, a Delaware corporation, receipt of which is hereby acknowledged and other good and valuable consideration . . .". Virgil Stone was

accompanied at the closing by two attorneys, his personal attorney as well as counsel for Stone Motor. Stone Motor alleges that no GM representative was present at the closing. The record is unclear regarding how the release arrived at the closing.

II

It is undisputed that Stone Motor executed the release and that all of Stone Motor's allegations relate to events that occurred prior to execution of the release. As such, there is no dispute that the release bars all of the present claims if the release is a valid contract. Stone Motor disputes the validity of the release based on theories of lack of consideration and economic duress.

Stone Motor asserts via affidavit that the recited $1.00 "peppercorn" was never paid and that no other valuable consideration was exchanged. GM argues that the parol evidence rule prevents the introduction of evidence to contradict the release's unambiguous recitation of consideration. GM further argues that, even if parol evidence were admissible, the approval of Stone Motor's sale of the franchise to the subsequent franchisee served as the "other good and valuable consideration" alluded to by the release. Stone Motor counters that the approval was granted prior to closing and comprised "past consideration" incapable of supporting the later-signed release.

Missouri contract law provides an exception to the parol evidence rule that allows parties to introduce extrinsic evidence to rebut recitations of consideration if the recitation is a "mere recitation" of fact, such as the acknowledgment of payment received, and is not a part of the terms of the contract itself. In Cit Group/Sales Fin., Inc. v. Lark, 906 S.W.2d 865 (Mo. Ct. App. 1995), the Missouri Court of Appeals stated:

-4-

'[c]onsideration, or lack thereof, may always be shown by extrinsic evidence in a controversy between the original parties to an agreement even if the evidence tends to vary the consideration stated in the agreement.' This exception applies only to contracts in which the named consideration is a mere recital of a fact of something done, such as the acknowledgment of the receipt of a payment.

Id. at 868-69 (quoting Rose v. Howard, 670 S.W.2d 142, 145 (Mo. Ct. App. 1984)) (other citations omitted). This Court has previously recognized and discussed Missouri's exception to the parol evidence rule:

. . . when the recital of a consideration in a written contract can be fairly regarded as a mere recital, or a statement of the receipt of money, then such recital may be explained by parol, and the actual consideration for the contract shown even though to do so may apparently contradict the recital in the contract. In this class of cases the recital as to the consideration is regarded in the same light as a receipt for money and may be explained, or even contradicted by parol; but, if the statement in a written contract in relation to the consideration shows upon its face that the expressed consideration is a part of the terms of the contract itself, then that part of the writing stands as any other part, and it cannot be contradicted, added to, nor subtracted from, by parol.

Roberts v. Browning, 610 F.2d 528, 535-36 (8th Cir. 1979) (citing Fox Midwest Theatres, Inc. v. Means, 221 F.2d 173, 177 (8th Cir. 1955), quoting from Pile v. Bright, 137 S.W. 1017, 1018 (Mo. Ct. App. 1911)).

GM argues that the present recitation is not a "mere recitation" but rather comprises "a part of the contract itself." We disagree. The present recitation is precisely the type of inattentive "mere recitation" envisioned by the Missouri courts that fashioned the exception. Ezo v. St. Louis Smelting & Refining Co., 87 S.W.2d 1051, 1053 (Mo. Ct. App. 1935) (refusing to apply the exception but stating, "the statement in an instrument, without more, of a certain amount of money as the

consideration for the execution of the instrument is indeed frequently to be regarded as but the inattentive recital of valuable consideration not intended to be specifically and accurately expressed."). Here, GM and Stone Motor literally employed a "mere recital" by executing a release without specifically identifying the true value exchanged or the actual forbearance exercised by either party.

By contrast, in cases where the Missouri courts refused to apply the exception, the recited consideration was not analogous to a "receipt for money," Roberts, 610 F.2d at 536. For example, in Meyer v. Weber, 109 S.W.2d 702 (Mo. Ct. App. 1937), the Missouri Court of Appeals refused to apply the exception to the parol evidence rule because the recitation of consideration was a promise of future, ongoing payment in exchange for the services of certain musicians. Such a recitation of consideration was a contract term rather than a mere recitation. Id. at 704-05. Similarly, the Missouri Court of Appeals refused to apply the exception to a computer equipment lease where a plaintiff sought to introduce parol evidence to show that the agreement was intended to relate to certain software not listed within the written instrument's detailed recitation of leased hardware and software. Cit Group/Sales Fin., 906 S.W.2d at 868-69. In the present case, the present recitation of one dollar and other good and valuable consideration does not reflect any attempt by the parties to identify the true nature of the value exchanged or forbearance exercised.[1] As such, Missouri's exception applies and parol evidence is admissible to test the veracity of the recitation.

The only evidence in the record regarding the payment of consideration is contradictory. The contract recites payment and Virgil Stone's affidavit rebuts the

[1]Of course, one dollar generally is sufficient consideration and this Court, like the courts of Missouri, will not inquire as to the sufficiency of consideration actually exchanged. However, the issue at hand is not whether the consideration was sufficient, but rather whether the recited consideration or some other consideration was actually paid.

contract. Regarding "other valuable consideration," GM argues that the release was signed as a part of the overall sale of the franchise and is therefore supported by the consideration involved in the transfer of the franchise. Virgil Stone did sign the release as a part of the sale of the franchise to the subsequent owner. However, the record indicates that GM provided some type of approval for the sale prior to Virgil Stone's execution of the release. Stone Motor argues that the timing of the prior approval demonstrates that the approval was already in hand and could not serve as consideration for a later contract. Stone Motor then asserts that the release was signed "as required by GM." Through this assertion, Stone Motor appears to contradict itself by conceding that GM's approval was still pending or uncertain at the time of closing. Suffice it to say, the record is not clear regarding the closing of Stone Motor's sale and the signing of the release. Accordingly, an evidentiary hearing is required to determine whether the release is supported by consideration.

Stone Motor argues in the alternative that the release must fail because it was signed under a state of economic duress caused by GM. Stone Motor's argument lacks merit. Virgil Stone was accompanied by two attorneys when he signed the release, his personal attorney and the attorney for Stone Motor. Stone Motor, through its representative Virgil Stone, was not deprived of its free will. Stone Motor faced a choice: sign the release and sell the franchise or retain the franchise and seek available legal remedies. It is undisputed that Stone Motor was represented by counsel and had ample opportunity to understand its rights. Under such circumstances, the Eighth Circuit and the courts of Missouri have uniformly rejected attempts to void contracts under a theory of economic duress. See Schmalz v. Hardy Salt Co., 739 S.W.2d 765, 768 (Mo. Ct. App. 1987) ("Where an experienced business man takes sufficient time, seeks the advice of counsel and understands the content of what he is signing, he cannot claim the execution of the release is the product of duress."); see also Anselmo v. Manufacturers Life Ins. Co., 771 F.2d 417, 420 (8th Cir. 1985) ("Although he surely confronted a difficult dilemma – accepting the termination perks or pursuing his legal rights under the employment agreement – the

fact that the choice was difficult does not mean that he lacked the requisite free will to make the decision."); see also Landmark North County Bank v. National Cable Training Ctrs., Inc., 738 S.W.2d 886, 891 (Mo. Ct. App. 1987) ("To constitute duress, the victim must have been so acted upon by threats of the person claiming [the] benefit of the release as to deprive the victim of the mental state essential to the making of the contract.").

GM argues that, even if the release is infirm, Stone Motor ratified the release by waiting two years after execution to bring the present action. GM identified no claims, accounts, or liabilities that it waived or refrained from asserting against Stone Motor due to the release. The mere passage of time, without demonstration of a benefit received due to reliance, cannot serve to bind a party to an agreement through ratification. See, e.g., Diffenderfer v. Heublein, Inc., 412 F.2d 184, 188 (8th Cir. 1969) (finding employee had ratified agreement naming corporate subsidiary as employer after employee received salary and expense payments from subsidiary, borrowed funds from subsidiary without interest, and applied for country club membership listing subsidiary as employer); Long's Marine Inc. v. Boyland, 899 S.W.2d 945, 947-48 (Mo. Ct. App. 1995) (finding ratification where purchaser of boat dealership acted in accordance with contract by using facilities and selling retained inventory); Schmalz, 739 S.W.2d at 768 (finding former employee ratified release through acceptance of continued employment for finite term following execution of release and acceptance of negotiated sum). The only alleged benefit to Stone Motor identified by GM is the underlying consideration for the release. If this consideration, in fact, was exchanged, then GM's ratification argument is moot – the release would have been valid from its inception. On the other hand, if this consideration was not exchanged, then Stone Motor received no benefit under the release and GM's ratification argument fails. In either event, the validity of the release depends upon an evidentiary analysis before the district court.

Having determined that outstanding questions of fact preclude disposition of this appeal based on the release, it is necessary to review the district court's dismissal of Stone Motor's statutory claim and grant of summary judgment.

## III

Missouri, like many states, has a motor vehicle franchise practices statute. MO. REV. STAT. § 407.810-835 (1997).[2] The purpose of the MVFPA is to level the contractual playing field between local franchisees and motor vehicle manufacturers. G.A. Imports Inc. v. Subaru Mid-America, Inc., 799 F.2d 1200, 1208 (8th Cir. 1986) ("... in drafting the Franchise Act, the Missouri legislature intended to alter the relative bargaining positions of the new motor vehicle franchisor and franchisee by subordinating express contractual language to notions of reasonableness."). Stone Motor alleges various violations under the MVFPA, specifically, that GM's conduct violated: section 407.825.1(1) in that GM's conduct was capricious, in bad faith, and unconscionable; section 407.825.1(3) in that GM unreasonably refused to deliver new motor vehicles in reasonable quantities and within a reasonable time after receipt of orders for vehicles which, as ordered, were publicly advertised by GM to be available

---

[2]The Missouri legislature amended the MVFPA in 1997. *See* Mo. Legis. Serv. 516 (1997). The 1997 amendments, coincidentally, were signed into law on the same day as the closing for Stone Motor's sale of the franchise and dealership. However, because the effective date of the amendments was 90 days after the end of Missouri's legislative session, the amendments did not become effective until after Virgil Stone signed the release. Therefore, the business relationship between Stone Motor and GM clearly had ceased prior to the effective date of the 1997 amendments. Stone Motor and the lower court did not distinguish between the current and former versions of the MVFPA. However, GM correctly noted that one of the sections Stone Motor relies upon in its complaint, MO. REV. STAT. § 407.825.1(15), did not exist prior to the 1997 amendments. Accordingly, the district court's dismissal is affirmed with regard to Stone Motor's claim under section § 407.825.1(15). All citations and discussion of other relevant portions of the MVFPA relate to the 1997, pre-amendment version.

for immediate delivery; and section 407.825.1(9) in that GM imposed unreasonable standards of performance upon Stone.[3]

Under Federal Rule of Civil Procedure 12(b)(6), all factual allegations must be accepted as true and every reasonable inference must be granted in favor of the complainant. FED. R. CIV. P. 12(b)(6); see also Midwestern Mach., Inc. v. Northwest Airlines, Inc., 167 F.3d 439, 441 (8th Cir. 1999); Carney v. Houston, 33 F.3d 893, 894 (8th Cir. 1994). This Court reviews the district court's grant of a motion to dismiss *de novo*. Young v. City of St. Charles, Mo., 244 F.3d 623, 627 (8th Cir.

---

[3]The cited portions of the MVFPA provide:

The performance, whether by act or omission, by a motor vehicle franchisor of any or all of the following activities enumerated in this section are hereby defined as unlawful practices . . .

(1) To engage in any conduct which is capricious, in bad faith, or unconscionable and which causes damage to a motor vehicle franchisee or to the public; . . .

(3) To unreasonably refuse to deliver in reasonable quantities and within a reasonable time after receipt of orders for new motor vehicles, such motor vehicles as are so ordered and as are covered by such franchise and as are specifically publicly advertised by such motor vehicle franchisor to be available for immediate delivery; provided, however, the failure to deliver any motor vehicle shall not be considered a violation of sections 407.810 to 407.83; if such failure is due to an act of God, work stoppage, or delay due to a strike, labor difficulty, shortage of products or materials, freight delays, embargo, or other cause of which such motor vehicle franchisor shall have no control; . . .

(9) To impose unreasonable standards of performance upon a motor vehicle franchisee;

MO. REV. STAT. § 407.825.1 (1997).

-10-

2001) (citing <u>Springdale Educ. Ass'n v. Springdale Sch. Dist.</u>, 133 F.3d 649, 651 (8th Cir. 1998) and <u>Halfley v. Lohman</u>, 90 F.3d 264, 266 (8th Cir. 1996)).   "In determining whether the district court properly granted the motion, we must accept all of the allegations set forth in [the plaintiff's] complaint as true, and we will affirm only if it appears beyond doubt that he cannot prove any set of facts in support of his claim which would entitle him to relief."  <u>Sisley v. Leyendecker</u>, 260 F.3d 849, 850 (8th Cir. 2001) (citing <u>Carpenter Outdoor Adver. Co. v. City of Fenton</u>, 251 F.3d 686, 688 (8th Cir. 2001)).

In light of this standard, we cannot agree with the district court that Stone Motor failed to allege facts which, if proven, would support its claims.   Stone Motor's allegations identified delays in association with the delivery of specific vehicles, the refusal by GM to process orders, and the refusal by GM to supply Stone Motor with more popular models "in comparable numbers to those supplied to other Chevrolet-Geo dealers of the same or similar size and/or in the same geographic region."  GM argues that Stone Motor did not draft its allegations with sufficient specificity.  We disagree.  To require more of Stone Motor under a Rule 12(b)(6) analysis would be to ignore the minimal standards inherent in our system of notice pleading.  *See* FED. R. CIV. P. 8(a).

In the alternative, GM argues that it acted in accordance with the grant of discretion contained in the agreement, and that the MVFPA cannot impose liability where a franchisor merely acts in accordance with the terms of a franchise agreement. This position misconstrues a franchisee's rights under the MVFPA as being merely coextensive with the franchisee's contractual rights.  In fact, the MVFPA provides rights and remedies additional to those available under contract.  "The [MVFPA] thus contemplates  precisely what [the franchisor] objects to: judicial oversight of the terms of the franchise relationship."  <u>G.A. Imports</u>, 799 F.2d at 1208.  Accordingly, a contractual grant of rights cannot serve as a shield to an MVFPA claim.

-11-

As this Court has previously stated, "... a dismissal under Rule 12(b)(6) should be granted only in the unusual case in which a plaintiff includes allegations that show, on the face of the complaint, that there is some insuperable bar to relief." Schmedding v. Tnemec Co., Inc., 187 F.3d 862, 864 (8th Cir. 1999). Regarding MO. REV. STAT. § 407.825.1(15), such an insuperable bar exists because this statutory subsection did not exist at the time the alleged violation occurred. See Mo. Legis. Serv. 516 (1997); see also supra Note 2 . Regarding Stone Motor's allegations under the other cited subsections, no such insuperable bar exists. Accordingly, Stone Motor's complaint was sufficient to serve its purpose, i.e., to place GM on notice of the claims being alleged. The district court's dismissal of Stone Motor's claims under MO. REV. STAT. § 407.825.1(1), (3), and (9) is reversed.

IV

This Court reviews the district court's grant of summary judgment *de novo*. Jaurequi v. Carter Mfg. Co., Inc., 173 F.3d 1076, 1085 (8th Cir. 1999) (citing State Farm Mut. Auto. Ins. Co. v. Shahan, 141 F.3d 819, 821 (8th Cir. 1998)). Summary judgment is appropriate if the record, viewed in a light most favorable to the non-moving party, contains no questions of material fact and demonstrates that the moving party is entitled to judgment as a matter of law. Jaurequi, 173 F.3d at 1085. The moving party bears the burden of showing both the absence of a genuine issue of material fact and an entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); see also FED. R. CIV. P. 56(c). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. FED. R. CIV. P. 56(e).

Stone Motor relies primarily upon the affidavit of Virgil Stone to assert that GM failed to fill orders in a timely fashion, provided an insufficient quantity of

vehicles, withheld desirable, fast-selling models, failed to provide inventory comparable to the inventory at nearby GM dealerships, refused to process orders, and instructed Stone Motor to send customers to other GM franchisees. Using these factual allegations, Stone Motor presents two separate breach of contract theories. The first theory alleges a specific duty and a breach of that duty. Under this theory, Stone alleges certain parol documents (such as Stone Motor's franchise application) imposed on GM a duty to provide a specific number of vehicles. Under the second theory of liability, Stone Motor alleges a breach of the general duty of good faith and fair dealing that is implied by Missouri law under every contract.

The district court correctly rejected Stone Motor's first argument. Even assuming that GM somehow ratified Stone Motor's preliminary documents and initially became bound to provide vehicles in numbers consistent with Stone Motor's sales projections, any such duty was superceded by the later written agreement which contained an unambiguous merger clause (at section 17.11 of the Standard Provisions Dealer Sales and Service Agreement). There is no dispute that section 6.1 of the agreement accords broad discretion to GM to allocate vehicles among its various dealers.[4] Accordingly, the preliminary documents relied upon by Stone Motor are

_____

[4]The agreement in the present case provides:

Division will endeavor to distribute new Motor Vehicles among its dealers in a fair and equitable manner. Many factors affect the availability and distribution of Motor Vehicles to dealers including component availability, and production capacity, sales potential in Dealer's Area of Primary Responsibility, varying consumer demand, weather and transportation conditions, governmental regulations, and other conditions beyond the control of General Motors. Division reserves to itself discretion in accepting orders and distributing Motor Vehicles, and its judgments and decisions are final. Upon written request, Division will advise Dealer of the total number of new Motor Vehicles, by series, sold to Dealers in Dealer's Zone or Branch during the preceding month.

parol evidence that cannot be used to establish a quota system contrary to the clear and express allocation of discretion contained in the agreement. Clearly Canadian Beverage Corp. v. American Winery, Inc., 257 F.3d 880, 889 (8th Cir. 2001) (applying Missouri law); see also Union Elec. Co. v. Consolidated Coal, Co., 188 F.3d 998, 1002 (8th Cir. 1999) (applying Missouri law).

However, this does not end our analysis. Missouri law[5] implies a duty of good faith in every contract:

> 'Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement.' That duty prevents one party to the contract from exercising a judgment conferred by the express terms of [the] agreement in such a manner as to evade the spirit of the transaction or so as to deny the other party the expected benefit of the contract.

Amecks, Inc. v. Southwestern Bell Tel. Co., 937 S.W.2d 240, 243 (Mo. Ct. App. 1996) (quoting Wulfing v. Kansas City S. Indus., Inc., 842 S.W.2d 133, 157 (Mo. Ct. App. 1992) and RESTATEMENT (SECOND) OF CONTRACTS § 205 (1981)). The district court correctly held that the general, implied duty of good faith was incapable of altering the express terms of the agreement which clearly vested discretion in this area solely with GM. "[T]he covenant cannot give rise to new obligations not otherwise contained in a contract's express terms." Comprehensive Care Corp. v. RehabCare Corp., 98 F.3d 1063, 1066 (8th Cir. 1996) (citing Glass v. Mancuso, 444 S.W.2d 467-68 (Mo. 1969)). As this Court has previously held:

---

Appellee's Appendix at 209, Dealer Sales and Service Agreement § 6.1.

[5]Although the agreement specifies that Michigan law should apply, neither party attempted to assert Michigan law below, and neither party disputes the application of Missouri law at this stage of the proceedings.

... the covenant acts merely as a gap filler to deal with circumstances not contemplated by the parties at the time of contracting. Since good faith is merely a way of effectuating the parties['] intent in unforeseen circumstances, the implied covenant has nothing to do with the enforcement of terms actually negotiated and cannot block [the] use of terms that actually appear in the contract.

United States v. Basin Elec. Power Coop., 248 F.3d 781, 796 (8th Cir. 2001) (internal citations and quotations omitted). Accordingly, Stone Motor cannot establish an entitlement to a specific number of vehicles through arguments based on the duty of good faith.

Having correctly determined that the general duty of good faith and fair dealing could not "trump" the agreement's clear allocation of discretion to GM by creating a duty to deliver vehicles according to a stated quota, the district court ended its analysis and determined that summary judgment was appropriate. We disagree. To create a genuine question of material fact regarding breach of the duty of good faith, Stone Motor was not required, as argued by GM, to establish an entitlement to receive a specific number of vehicles. Rather, Stone Motor merely needed to present evidence tending to demonstrate that GM exercised its discretion "so as to evade the spirit of the transaction or so as to deny the other party the expected benefit of the contract." Amecks, 937 S.W.2d at 243.

As the moving party, GM bears the burden of demonstrating that there exist no questions of material fact. GM has failed to meet this burden. Rather than defending its exercise of discretion under the agreement and presenting evidence to explain the performance deficiencies identified in Virgil Stone's affidavit, GM merely asserted that the grant of unilateral discretion was a shield against any claims for breach of good faith. Under Missouri law, "the implied duty of one party to a cooperate with the other party to a contract to enable performance and achievement of expected

-15-

benefits is an enforceable right." Koger v. Hartford Life Ins. Co., 28 S.W.3d 405, 412 (Mo. Ct. App. 2000) (internal citations omitted). GM enjoyed broad discretion under the agreement. Consequently, Stone Motor was not entitled to receive everything that it desired. However, in light of the restrictions imposed by both Missouri contract law and the MVFPA, Stone Motor was entitled to have GM exercise its discretion in good faith. Stone Motor introduced evidence via affidavit which, if accepted as true and viewed in a light most favorable to Stone Motor, could support claims for breach of the duty of good faith. GM did not provide evidence to rebut Stone Motor's assertions.[6] Consequently, we find that GM has failed to prove an absence of genuine

---

[6]GM argues that it satisfied the duty of good faith and fair dealing by adhering to an objective vehicle allocation formula. In fact, GM presented no evidence to support these arguments and, accordingly, Stone Motor need not rebut these assertions to survive summary judgment. GM's attorney, while deposing Virgil Stone, introduced the concept of GM's objective vehicle allocation system – the "turn and earn" system – under which GM purportedly allocates vehicles based partly on a dealership's ability to sell cars quickly. GM presented no evidence regarding such a system. GM's attorney alluded to such a system and Virgil Stone admitted that he did not know whether GM had used such a system regarding the allocation of vehicles to Stone Motor. Attorney statements are not evidence. Further, even if the statement of GM's attorney served as evidence, GM did not expand on this issue or present evidence tending to show that GM had, in fact, employed such a system in this instance. The exchange is detailed below:

Q.      [Attorney for GM] You understand, do you not, that the way the allocation system works, it depends in part on the rate at which vehicles are sold?

A.      [Virgil Stone] Chevrolet's terminology of turn and earn? Is that what you're talking about?

Q.      Yes.

A.      Yes sir.

Q.      All right. And you don't know at what rate your – you don't know the rate at which the other dealers that you're talking about had sold their vehicles previously, do you?

A.      I don't know the rate?

-16-

questions of material fact. Accordingly, the district court's grant of summary judgment on Stone Motor's claim for breach of the duty of good faith and fair dealing is reversed.

Accordingly, the judgment of the district court is reversed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

Q.   And you don't know whether or not GM assigned vehicles to your dealer in accordance with its own formula or not, do you?

A.   I don't know that.

Deposition Transcript of Virgil Stone at 83-84.