370 F.Supp.2d 892 (2005)
Chad JOHNSON, et. al., Plaintiffs,
v.
BOARD OF POLICE COMMISSIONERS: Jo Ann Freeman, et. al., Defendants.
No. 4:04CV-01266ERW.
United States District Court, E.D. Missouri, Eastern Division.
April 27, 2005.
*893 *894 Ann B. Lever, Dan K. Glazier, Legal Services of Eastern Missouri, St. Louis, MO, John J. Ammann, Susan W. McGraugh, Brittney Stockton (law student), Sudip Kundu (law student), and Todd Parker (law student), St. Louis University Legal Clinic, St. Louis, MO, Jane H. Aiken, Steven J. Gunn, Catherine E. Johnson, R. Steven Connor (law student), Erin Kepplinger (law student), Laura Mendelson (law student), Carol Morganstern (law student), Andray Napolez (law student), Tony Oliver (law student), and Laura Yates (law student), Washington University School of Law Civil Justice Clinic, St. Louis, MO, Stephen M. Ryals, Ryals Law Firm, P.C., St. Louis, MO, Denise D. Lieberman, American Civil Liberties Union, St. Louis, MO, for plaintiffs.
Erwin O. Switzer, III, Steven Brown, Missouri Attorney General's Office, St. Louis, MO, for Defendants Board of Police Commissioners: Jo Ann Freeman, Susan C.J. Rollins, Bartholomew Saracino, Michael J. Quinn, and Francis G. Slay, and Mary J. Warnecke, Commander of the Fourth Police District of the St. Louis Police Department.
Carl W. Yates, III, Donald G. Dylewski, Judith A. Ronzio, St. Louis City Counselors, St. Louis, MO, for Defendant City of St. Louis.

MEMORANDUM AND ORDER
WEBBER, District Judge.
This matter comes before the Court upon Motions of Defendants Captain Mary J. Warnecke ("Defendant Warnecke") and City of St. Louis to Dismiss Plaintiffs' Complaint for Failure to State a Claim, pursuant to Fed.R.Civ.P. 12(b)(6) [doc. # 32, 34].[1]
I. BACKGROUND FACTS
On September 17, 2004, Plaintiffs filed a Complaint against Defendants Warnecke, City of St. Louis, and St. Louis Board of Police Commissioners ("Police Board"). In the Complaint, Plaintiffs seek declaratory and injunctive relief and damages for the violation of their rights under the Fourth, Thirteenth, and Fourteenth Amendments to the United States Constitution and pursuant to 42 U.S.C. §§ 1983, 1988.
Plaintiffs' Complaint relates to the ongoing revitalization of the commercial and residential character of Downtown St. Louis. On September 17, 2004, Chad Johnson, Kenneth Tate, John Brinkman, John Edwards, Harold Jackson, Ronnie Trawick, John Coleman, Loyde Henley, Joseph Kitchen, Glenn White, Everett Harris, Sandra Holbrook, and Stacy Smith ("Plaintiffs") filed this 42 U.S.C. § 1983 action, seeking injunctive and declaratory relief and damages against Defendants Police Board, Warnecke, and City of St. Louis. Plaintiffs also filed a Motion for Temporary Restraining Order and Preliminary Injunction. Plaintiffs allege that Defendants have acted to "clean up" Downtown St. Louis by intimidating Plaintiffs *895 and other homeless or homeless-appearing individuals and discouraging them from lawfully being in public areas, in violation of their constitutional rights.
In the Complaint, Plaintiffs assert that Defendants have committed violations of Plaintiffs' constitutional rights. Specifically, Plaintiffs allege that Defendant Police Board, in connection with Defendant City of St. Louis, have a persistent custom of removing and discouraging homeless people from remaining in the Downtown area, causing Plaintiffs to suffer numerous constitutional violations. These include violations of (1) the Fourth Amendment right to be secure against unreasonable seizures of persons and property; (2) the Right to Travel, as guaranteed by the Fourteenth Amendment's Substantive Due Process Clause; (3) the right to be free from punishment without due process of law, as guaranteed by the Fifth and Fourteenth Amendments; and (4) the Thirteenth Amendment's prohibition against involuntary servitude.
In Count I of the Complaint, Plaintiffs allege that the St. Louis Police Department acted pursuant to a policy or custom of removing homeless and homeless appearing people from downtown St. Louis and discouraging them from remaining there by:
a. detaining, arresting, and confining them longer than needed to obtain a warrant, and by seizing and destroying their personal property, in violation of Plaintiffs' rights to be free from unlawful seizure of their person or property under the Fourth and Fourteenth Amendments to the United States Constitution;
b. forcing them to leave public parks and areas without lawful excuse or justification and warning them that certain areas of St. Louis are off-limits because of their homeless status in violation of Plaintiffs' rights to be, move, and stay put in public places for lawful purposes under the Due Process Clause of the Fourteenth Amendment to the United States Constitution;
c. forcing and coercing them to perform manual labor under threat of confinement before an adjudication of guilt in violation of Plaintiff's rights to be free from involuntary servitude and punishment without a judicial determination of guilt under the Thirteenth and Fourteenth Amendments to the United States Constitution.
See Compl. ¶ 173-75. Plaintiffs allege that Defendant Police Board has the authority to prevent the existence of this policy or custom and has failed to do so. According to the Complaint, Defendant Police Board had notice of this policy or custom and intentionally disregarded or was deliberately indifferent to the risk of constitutional violations. Plaintiffs also allege that Defendant Police Board has the duty to screen, train, supervise, discipline, and otherwise control the officers of the St. Louis Police Department. Plaintiffs allege that Defendant Police Board failed in this duty by not preventing the conduct described above, causing the violation of Plaintiffs' constitutional rights.
In Count II of the Complaint, Plaintiffs bring suit against Defendant Warnecke in her official and individual capacities. Plaintiffs allege that Defendant Warnecke, as commander of the Fourth Police District of the St. Louis Police Department and the highest ranking officer in the district encompassing downtown St. Louis, has the duty to supervise and control the conduct of officers serving in the Fourth District. Plaintiffs allege that Defendant Warnecke directly participated in or directed St. Louis Police Officers in taking the unconstitutional actions complained of *896 in the Complaint. By these actions, Plaintiffs allege that Defendant Warnecke intentionally disregarded or was deliberately indifferent to the risk of constitutional violations of which she knew or should have known, thereby causing the deprivation of Plaintiffs' constitutional rights. Plaintiffs further allege that these acts and failures to act by Defendant Warnecke were intentional, wanton, malicious, and reckless and thereby entitle them to punitive damages against Defendant Warnecke in her individual capacity.
In Count III of the Complaint, Plaintiffs allege that Defendant City of St. Louis has acted pursuant to a policy or custom to remove homeless and homeless appearing people from downtown St. Louis and to discourage them from remaining there by:
a. detaining, arresting, and confining them longer than needed to obtain a warrant, and by seizing and destroying their personal property, in violation of Plaintiffs' rights to be free from unlawful seizure of their person or property under the Fourth and Fourteenth Amendments to the United States Constitution;
b. forcing them to leave public parks and areas without lawful excuse or justification and warning them that certain areas of St. Louis are off-limits because of their homeless status in violation of Plaintiffs' rights to be, move, stay put in public places for lawful purposes under the Due Process Clause of the Fourteenth Amendment to the United States Constitution;
c. forcing and coercing them to perform manual labor under threat of confinement before an adjudication of guilt in violation of Plaintiff's rights to be free from involuntary servitude and punishment without a judicial determination of guilt under the Thirteenth and Fourteenth Amendments to the United States Constitution.
See Compl. ¶ 193-95. Plaintiffs allege that Defendant City of St. Louis has the authority to prevent the existence of the policies or customs described above and failed to do so, thereby causing the deprivation of Plaintiffs' constitutional rights. According to the Complaint, Defendant City of St. Louis had notice of this policy or custom and intentionally disregarded or was deliberately indifferent to the risk of constitutional violations.
On October 14, 2004, this Court granted Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction against Defendants Police Board and City of St. Louis. Defendants Warnecke and City of St. Louis subsequently moved to dismiss Counts II and III, respectively, for failure to state a claim upon which relief may be granted.[2]
II. MOTION TO DISMISS STANDARD
The standards governing motions to dismiss are well-settled. A complaint shall not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of a claim entitling him or her to relief. Breedlove v. Earthgrains Baking, 140 F.3d 797, 799 (8th Cir.1998)(citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). When deciding a motion to dismiss *897 under Rule 12(b)(6), the Court must assume that all material facts alleged in the complaint are true. Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 633, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999). The court must view all facts and inferences in the light most favorable to the non-moving party and "may dismiss the complaint only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the complaint." McMorrow v. Little, 109 F.3d 432, 434 (8th Cir.1997); Stone Motor Co. v. Gen. Motors Corp., 293 F.3d 456, 464 (8th Cir.2002). Thus, as a practical matter, a dismissal under Rule 12(b)(6) should be granted "only in the unusual case in which a plaintiff includes allegations that show, on the face of the complaint, that there is some insuperable bar to relief." Strand v. Diversified Collection Serv., Inc., 380 F.3d 316, 317 (8th Cir.2004). The issue on a motion to dismiss is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his or her claim. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).
III. DISCUSSION
Plaintiffs have filed suit against Defendants Police Board, Warnecke, and City of St. Louis, alleging three counts under 42 U.S.C. § 1983, one against each Defendant. Defendants Warnecke and City of St. Louis have moved to dismiss counts II and III, respectively, for failure to state a claim upon which relief may be granted.
Section 1983 is a remedial statute. It provides that a person acting under "color of any statute, ordinance, regulation, custom, or usage, of a State or Territory or the District of Columbia" is liable for the "deprivation of any rights, privileges, or immunities secured by the Constitution and its laws." 42 U.S.C. § 1983. The statute is "merely a vehicle for seeking a federal remedy for violations of federally protected rights." Foster v. Wyrick, 823 F.2d 218, 221 (8th Cir.1987). Because § 1983 does not create substantive rights, a plaintiff must identify an underlying federal or constitutional right infringed upon by a defendant to state a claim.
A. Count II: Defendant Warnecke
In Count II, Plaintiffs sue Defendant Warnecke in both her official and individual[3] capacities. Defendant Warnecke seeks to dismiss Count II on three grounds. First, Defendant Warnecke argues that the suit against her in her official capacity should be dismissed because it is redundant and unnecessary given that her employer, Police Board, is also a defendant. Second, Defendant Warnecke argues that the suit against her in her individual capacity fails because: (a) she did not have sufficient supervisory control over the conduct of police officers or city correction officers; and (b) Plaintiffs do not allege any specific actions taken by her that violated the constitutional rights of any particular Plaintiff. Third, Defendant Warnecke claims that she is entitled to qualified immunity and states that the Complaint does not allege facts sufficient to permit her to adequately raise the defense.
1. Official Capacity
Under 42 U.S.C. § 1983, individual capacity suits seek to impose personal liability upon an official for actions taken under color of law. Scheuer v. Rhodes, 416 U.S. 232, 237-238, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). In contrast, official capacity suits do not seek to impose liability on the defendant personally, but instead seek to hold liable the entity of which the *898 officer is an agent. Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." Monell, 436 U.S. at 690 n. 55, 98 S.Ct. 2018. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). It is not a suit against the official personally, for the real party in interest is the entity. Id. Defendant Warnecke seeks to dismiss Plaintiff's claim against her in her official capacity because it is redundant and unnecessary given that Defendant Warnecke's employer, Defendant Police Board, is also a named defendant. However, Defendant Warnecke cites no authority supporting dismissal on this ground, and the Court has found no authority mandating dismissal for this reason alone. While suing Defendant Warnecke in her official capacity may be duplicitous because such an action is to be treated as a suit against her employer, this fact alone does not require dismissal at this stage in the proceeding. Thus, the request for dismissal of the claim against Defendant Warnecke in her official capacity will be denied.[4]
2. Individual Capacity
Defendant Warnecke is the commander of the Fourth District and is the highest ranking officer in that district. Pursuant to 42 U.S.C. § 1983, a supervisor may be sued in her individual capacity and held personally liable under two basic theories. First, a supervising officer may be liable if she participates in conduct that directly causes the violation of a plaintiff's constitutional rights. Andrews v. Fowler, 98 F.3d 1069, 1078 (8th Cir.1996). Under this first theory, it must be shown that the supervisor's own conduct directly caused a plaintiff's rights to be violated. Andrews, 98 F.3d at 1078. Second, a supervisor may be indirectly liable for failing to remedy a known constitutional violation or failing to supervise and train employees. Id. However, a supervising officer cannot be held liable merely on a theory of respondeat superior. Boyd v. Knox, 47 F.3d 966, 968 (8th Cir.1995). Under this second theory, if liability is based on a supervisor's failure to remedy a known constitutional violation or failure to supervise and train employees, it must be shown that the supervisor had notice, either of unconstitutional acts by subordinates or that training procedures and supervision were inadequate and likely to result in constitutional violations. Id. It also must be demonstrated that the supervisor was deliberately indifferent to or tacitly authorized the actions or procedures that caused the constitutional violation. Id. Indirect liability does not require the defendant to have personally participated in any constitutional deprivation committed by his subordinate officers or to have known about any violation at the time it occurred. Howard v. Adkison, *899 887 F.2d 134, 138 (8th Cir.1989) ("Proof of actual knowledge of constitutional violations is not, however, an absolute prerequisite for imposing supervisory liability."). See also Wever v. Lincoln County, Nebraska, 388 F.3d 601, 606 (8th Cir.2004).
The Eighth Circuit has recently recognized that heightened pleading requirements once imposed on a § 1983 plaintiff in suits against individuals have been abrogated. Doe v. Cassel, 403 F.3d 986, 2005 WL 820355 (8th Cir. April 11, 2005). As this Court has previously required, a § 1983 plaintiff need only plead a short, plain statement of her claim. See The Schatz Family v. Grier, No. 4:00CV489ERW, Slip Op. at 15 (E.D.Mo. March 24, 2004). Notice pleading requires a plaintiff to clearly state who is being sued, for what cause of action, and in what factual context. Id.
Upon review of the Complaint, it is clear that Plaintiffs have sufficiently stated a claim against Defendant Warnecke. Among other allegations, Plaintiffs allege that Defendant Warnecke:
directly participated in or directed St. Louis Police officers, including but not limited to, on information and belief, saying that she had extra officers over the July 4th holiday weekend and "she put them to work," in improperly detaining and arresting homeless and homeless appearing individuals in downtown St. Louis, forcing homeless and homeless-appearing people to remove themselves from public parks and other public areas and warning them that certain downtown areas are off-limits to them because of their homeless status, seizing and destroying the personal property of homeless and homeless-appearing people; confining homeless and homeless-appearing people in jail for longer than needed to obtain a warrant, preventing homeless people with proper licenses and permits from engaging in the authorized activities, and forcing homeless and homeless-appearing people to perform manual labor under threat of confinement and without seeing a judge.
Compl. ¶ 184. See also id. at ¶ 186 (Defendant Warnecke directly participated in or directed the unlawful conduct); id. at ¶ 15 (Defendant Warnecke "was exercising supervisory or command authority over the other officers present at the events described in th[e] Complaint."). Plaintiffs further allege that Defendant Warnecke:
intentionally disregarded known facts or alternatively was deliberately indifferent to a risk of the constitutional violations of which she knew or should have known, and her culpability caused the deprivation of Plaintiffs' rights under the Fourth, Thirteenth, and Fourteenth Amendments to the United States Constitution as described [in the Complaint].
Compl. ¶ 185. Finally, Plaintiffs allege that:
[a]s a direct and proximate result of the policies, practices, acts, and failures to act of Defendant Warnecke, Plaintiffs Johnson, Tate, Brinkman, Edwards, Jackson, White, Harris, Trawick, Coleman, Henley, Kitchen, Holbrook, and Smith suffered intimidation, humiliation, embarrassment, and emotional distress, and Plaintiffs Johnson, Tate, Brinkman, Edwards, Jackson, White, Harris, Trawick, Coleman, Henley, Kitchen, Holbrook, and Smith suffered mental anguish ...; and Plaintiffs Tate, Henley, Jackson, and Kitchen suffered damages for the loss of their personal property.
Compl. ¶ 187. These allegations rely on both direct and indirect theories of liability. The allegations against Defendant Warnecke are clearly connected to the other allegations contained in the Complaint in which Plaintiffs describe the alleged unlawful conduct of certain individuals allegedly under Defendant Warnecke's command. *900 See Compl. ¶¶ 23-81 (describing conduct of several named police officers); see also Compl. ¶ 1 (officers acted under control of Defendant Warnecke to "clean up" downtown St. Louis).[5] Plaintiffs have alleged a continuing pattern of unconstitutional misconduct by Defendant Warnecke in her capacity as supervisor of the Fourth District police officers, and Plaintiffs have stated a cognizable claim against Defendant Warnecke based on her alleged direct and indirect liability under § 1983.[6]
3. Qualified Immunity
Defendant Warnecke has raised the issue of whether she is entitled to qualified immunity at this stage of the proceedings. To establish qualified immunity on a motion to dismiss, Defendant Warnecke must show that she is entitled to qualified immunity on the face of the complaint. Bradford v. Huckabee, 394 F.3d 1012, 1015 (8th Cir.2005); see also Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir.1996). The qualified immunity analysis requires a two-step inquiry. The first question, taken in the light most favorable to the party asserting the injury, is whether the facts alleged show that the officer's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If the facts show that the officer violated a constitutional right, then the second question is whether the right was clearly established at the time of the alleged violation. Id. at 202, 121 S.Ct. 2151. In order to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that he is violating the right. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). If the right was clearly established, the officer may be liable and the suit proceeds. However, if the right was not clearly established, then the officer is immune from suit and the claim is dismissed. The policy rationale for requiring rights to be clearly established is that police officers are "not liable for bad guesses in gray areas; they are liable for transgressing broad lines." Davis v. Hall, 375 F.3d 703, 712 (8th Cir.2004).
As stated above, Plaintiffs' Complaint makes numerous allegations against Defendant Warnecke, including allegations that she had supervisory power over her subordinate police officers, that her subordinate officers violated the Plaintiffs' constitutional rights, and that Defendant Warnecke:
[I]ntentionally disregarded known facts or alternatively was deliberately indifferent to a risk of the constitutional violations of which she knew or should have known, and her culpability caused the deprivation of Plaintiff's rights under the Fourth, Thirteenth, and Fourteenth Amendments to the United States Constitution.
Compl. ¶ 185. In particular, the Complaint alleges violations of Plaintiffs' *901 Fourth Amendment right to be free from unreasonable searches and seizures, Fourteenth Amendment substantive due process rights to travel and be free from punishment without adjudication of guilt, and Thirteenth Amendment right to be free from involuntary servitude. Thus, Plaintiffs have properly alleged constitutional violations resulting from Defendant Warnecke's alleged conduct, and the first prong of the Saucier qualified immunity test is satisfied.
The second prong of the Saucier qualified immunity test requires the Court to consider whether the constitutional rights allegedly violated were "clearly established." The Court must consider whether a reasonable officer would have known that the alleged misconduct violated Plaintiffs' constitutional rights. In considering qualified immunity on a motion to dismiss, the Court must accept Plaintiffs' allegations as true and ask whether the alleged misconduct was objectively reasonable. Behrens v. Pelletier, 516 U.S. 299, 309, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996). Considering Plaintiffs' allegations of misconduct by Defendant Warnecke's subordinate officers and the allegation that Defendant Warnecke was deliberately indifferent or tacitly authorized this misconduct, this Court concludes that the second prong of Saucier is satisfied. Assuming the Complaint's facts as true, a reasonable supervising officer would have known that the alleged misconduct of subordinates violated Plaintiffs' constitutional rights. Moreover, taking the allegation as true, a reasonable officer would have known that her "direct[] participat[ion]" or "direction" would violate the clearly established rights of the Plaintiffs. Therefore, because the Complaint alleges clearly established constitutional violations of which a reasonable officer would have known, Defendant Warnecke's qualified immunity defense does not warrant dismissal of this action.
B. Count III: Defendant City of St. Louis
Defendant City of St. Louis moves to dismiss Count III on three grounds. First, City of St. Louis argues that it cannot be liable for actions taken by the Police because it has no legal authority to create policy for Defendant Police Board. Second, Defendant City of St. Louis argues that the alleged wrongful detention of Plaintiffs is, at most, a violation of state law, not the United States Constitution. Moreover, the City claims it cannot be liable for an unreasonable detention because it is the Police's duty to obtain warrants for those detained in the City's jail. Third, Defendant City of St. Louis claims judicial immunity with regard to Plaintiffs' allegation of forced manual labor. For these reasons, Defendant City of St. Louis claims the Complaint fails to state a claim upon which relief may be granted.
1. Policy or Custom of the City and Police
Under 42 U.S.C. § 1983, local governmental entities may be sued for declaratory and injunctive relief, as well as for compensatory damages. Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Local governments may be sued directly under § 1983 where the alleged unconstitutional action "implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers." Id. Local governments may also be sued for constitutional violations due to governmental "custom," even if such custom "has not received formal approval through the body's official decisionmaking channels." Id. at 690-91, 98 S.Ct. 2018. A "custom or usage" is demonstrated by showing (1) the existence of a "continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees"; *902 ( 2) the governmental entity's deliberate indifference to or tacit authorization of misconduct after receiving notice thereof; and (3) the custom was the moving force behind the constitutional violation. Kuha v. City of Minnetoka, 365 F.3d 590, 604 (8th Cir.2003).
Plaintiffs allege that Defendants City of St. Louis and Police Board acted in concert pursuant to a "policy or persistent, common, and well-settled practice and custom of intimidating and driving homeless and homeless appearing people from downtown St. Louis," which has resulted in a pattern of misconduct by Defendant City of St. Louis and its employees. Compl. ¶ 3. The Complaint further alleges that there has existed within the Defendant City of St. Louis "official policies or customs, practices and usages so pervasive that they constitute the policy of the City and the Department which have caused and will continue to cause the constitutional deprivations suffered by the Plaintiffs." Compl. ¶ 191. According to Plaintiffs' Complaint, the misconduct occurred before and after the Fourth of July Holiday Weekend and the City was on notice of the misconduct and intentionally disregarded it or was deliberately indifferent, resulting in the deprivation of Plaintiffs' constitutional rights. Compl. ¶¶ 4-5, 198-200.
Defendant City of St. Louis claims it has no legal authority to create policy for Defendant Police Board. Without legal authority, the City of St. Louis argues that there is no "legal tie" between Defendants City of St. Louis and Police Board, and Defendant City of St. Louis cannot be liable for alleged actions taken by police officers. Notwithstanding this assertion, the Court finds that the fact that the Defendants are separate legal entities does not prevent them from acting in concert to deprive constitutional rights pursuant to a joint policy or custom, as alleged in the Complaint.[7] Plaintiffs have alleged that Defendant City of St. Louis developed, and acted together with Defendant Board of Police, to implement the policies responsible for the alleged unconstitutional conduct at issue in this case. The fact that Defendant Police Board and Defendant City of St. Louis are separate legal entities does not warrant dismissal. Plaintiffs have adequately alleged the elements of municipal liability.
2. Unreasonable Detention
Plaintiffs' Complaint alleges that Defendant City of St. Louis violated their Fourth Amendment rights by unreasonably detaining them in jail for fourteen to twenty-four hours without a warrant or any intention of obtaining a warrant. Defendant contends that confining Plaintiffs for twenty hours or more is not unconstitutional and instead only violates state law. D. Mem. of Law at 5-6.
The Supreme Court has held that the Fourth Amendment requires a prompt judicial determination of probable cause for warrantless arrests but has not defined "promptness" in terms of a specific time *903 limit. Instead, the Supreme Court has held that warrantless arrests and detentions are unconstitutional if subject to unreasonable delay. County of Riverside v. McLaughlin, 500 U.S. 44, 53, 56, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). Examples of unreasonable delays, according to the Supreme Court, include "delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake." Id. Missouri's twenty-hour hold statute requires the release of all persons confined in jail without a warrant for twenty hours. Mo. Rev. Stat. § 544. 170 (2000). However, the statute "does not provide any authority to arrest persons without a warrant and hold them in custody for twenty hours." U.S. v. Oropesa, 316 F.3d 762, 769 (8th Cir.2003). Such a procedure is unconstitutional. See United States v. Roberts, 928 F.Supp. 910, 932-33 (W.D.Mo.1996)("This statute is not a sword in the hands of the police, but rather a shield for the citizen. The statute does not create an investigative tool for Missouri police officers or an independent basis for arrest."). Thus, Plaintiffs' allegation that they were confined without a warrant or any intention to obtain a warrant implies that their detention was unreasonably delayed for ill will or delay's sake. Plaintiffs have adequately stated a claim for wrongful detention under the Fourth Amendment.[8]
3. Judicial Immunity
Defendant City of St. Louis moves to dismiss Count III on the basis of judicial immunity. Count III alleges, in part, that Defendant City of St. Louis and its employees subjected Plaintiffs to manual labor upon threat of continued confinement before being charged or found guilty of a crime. Defendant City of St. Louis claims judicial immunity for the actions of its correctional officers because they acted pursuant to a facially valid judicial order. The Court finds this argument unpersuasive. Plaintiffs have filed suit against a municipality, Defendant City of St. Louis, and not against an individual in a personal capacity, such as a prosecutor, warden, or sheriff. Defendants cite no authority supporting the extension of judicial immunity to municipalities.[9] In fact, in Coleman v. *904 Watt, 40 F.3d 255, 261-62 (8th Cir.1994), the Eighth Circuit declined to extend judicial immunity to a municipality in a § 1983 action when its employees acted pursuant to a court order. In that case, the Eighth Circuit found that the defendant city could be held liable for the violation of the plaintiff's due process rights due to its adoption of a municipal judge's impoundment order as city policy. Id. at 262.[10] Defendant City of St. Louis has failed to demonstrate that it is entitled to judicial immunity. Accordingly, Defendant City of St. Louis' Motion will be denied.
Accordingly,
IT IS HEREBY ORDERED that Defendant Warnecke's Motion to Dismiss [doc. # 32] is DENIED.
IT IS FURTHER ORDERED that Defendant City of St. Louis' Motion to Dismiss [doc. # 34] is DENIED.
NOTES
[1] Defendants Warnecke and the City of St. Louis suggest that the Court convert their Motions to Dismiss into Motions for Summary Judgment. The Court will decline Defendants' invitation. If any Defendant wishes to make a Motion for Summary Judgment, that Defendant may do so in accordance with the applicable Local Rules and the deadlines set forth in the case management order governing this case.
[2] Defendants Warnecke and City of St. Louis filed Memorandums in Support of their Motions to Dismiss. On February 1, 2005, Erwin O. Switzer III entered his appearance on behalf of Defendant Warnecke. Defendant Warnecke was granted leave to file a Supplemental Memorandum in Support of her Motion to Dismiss. Plaintiffs responded and Defendant Warnecke replied to this Supplemental Memorandum.
[3] Individual-capacity actions are also referred to as personal-capacity actions. Kentucky v. Graham, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).
[4] In Defendant Warnecke's Reply, she implies that, as a state official, she cannot be sued in her official capacity under § 1983. This is a misapplication of the law. Suits against state officials in their official capacities are barred by sovereign immunity of the Eleventh Amendment because they are "no different from a suit against the State itself." Will v. Michigan Dep't of Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). But the U.S. Supreme Court has held that the St. Louis Police Board is "not `an arm of the State' for Eleventh Amendment purposes" and is not entitled to sovereign immunity. Auer v. Robbins, 519 U.S. 452, 456 n. 1, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997). Because the Police Board is not a state agency entitled to sovereign immunity, Defendant Warnecke is not immune as a state official.
[5] Contrary to Defendant Warnecke's argument, the Complaint does in fact allege numerous acts of misconduct by St. Louis police officers working under Defendant Warnecke's command. These acts were directed at, and allegedly caused, specific injury to each Plaintiff. The Complaint alleges a causal connection between the actions of the officers and the actions taken by Defendant Warnecke.
[6] Defendant Warnecke attempts to argue that she cannot be liable for the alleged wrongs to Plaintiffs at the hands of corrections officers because she "does not direct or control anything that goes on at the ... Justice Center." D. Mem. of Law at 3. However, this is an issue involving unanswered questions of fact which cannot be resolved on a motion to dismiss. Accordingly, it cannot provide a sufficient basis for granting Defendant's requested relief.
[7] Defendant City of St. Louis cites Crigler v. City of St. Louis, et al., 767 F.Supp. 197, 200 (E.D.Mo.1991), for the proposition that, because Defendant City of St. Louis is not an official policymaker for Defendant Police Board, it cannot be liable for actions of police officers as a matter of law. However, the plaintiff in Crigler sued the City of St. Louis alleging that the police officers acted pursuant to an official policy of the City of St. Louis, that the City of St. Louis "ordered, directed, approved and condoned" the officers conduct, and that the officers were employees and agents of the City. Id. at 198. The allegations in the instant case differ from those in Crigler. Here, Plaintiffs have alleged that the misconduct was a result of a joint policy or custom of both Defendant City of St. Louis and Police Board that was widespread, affecting many homeless and homeless appearing individuals and extending beyond mere police misconduct.
[8] Defendants further argue that, because the police are responsible for obtaining warrants, the City of St. Louis cannot be liable for any alleged wrongful detention. Plaintiffs allege that the jail employees "acted under the command and control of the City of St. Louis ... pursuant to the policy or the custom and practice of ... the City of St. Louis to remove homeless and homeless-appearing people from downtown St. Louis." Compl. ¶ 1. Defendant concedes that "the City runs the Municipal Court and the Justice Center (Jail) and could be held liable for activities involving those institutions." D. Mem. Supp. 3. Defendant City of St. Louis cites no authority for the proposition that it, as jailer, cannot be liable for wrongful detention as a matter of law. In the context of the factual situation present in this case, Plaintiffs have alleged that Defendant City of St. Louis and the police acted in concert to deprive Plaintiffs of their constitutional rights. The issue of who should be liable for an alleged unreasonable delay in Plaintiffs' detention requires factual determinations and cannot be properly resolved on a motion to dismiss. Thus, this argument does not provide a basis for granting the motion to dismiss.
[9] Defendant City of St. Louis cites several cases involving judicial immunity. However, of the cases cited, those that found judicial immunity applied all involved suits against individuals, such as wardens, sheriffs, and court clerks, who were sued in their personal capacities and who had acted pursuant to a facially valid court order. See Rogers v. Bruntrager, 841 F.2d 853 (8th Cir.1988) (court clerk); Tymiak v. Omodt, 676 F.2d 306, 308 (8th Cir.1982) (sheriff); Valdez v. City & County of Denver, 878 F.2d 1285, 1290 (10th Cir.1989) (sheriffs); Tarter v. Hury, 646 F.2d 1010, 1013 (5th Cir.1981) (court clerk); Slotnick v. Garfinkle, 632 F.2d 163, 166 (1st Cir.1980) (sheriff); Kermit Constr. Corp. v. Banco Credito Y Ahorro Ponceno, 547 F.2d 1, 3 (1st Cir.1976) (receiver); Hazo v. Geltz, 537 F.2d 747, 750 (3d Cir.1976) (official); Waits v. McGowan, 516 F.2d 203, 206 & n. 6 (3d Cir.1975) (police officers); Fowler v. Alexander, 478 F.2d 694, 696 (4th Cir.1973) (sheriff and jailor); Lockhart v. Hoenstine, 411 F.2d 455, 460 (3d Cir.1969) (public official).
[10] Moreover, in Coleman, the Eighth Circuit found the order at issue to be facially unconstitutional because the order failed to provide for a prompt post-deprivation hearing. Coleman, 40 F.3d at 260 (noting that due process requires certain procedures before depriving persons of their protected property interests). The order in this case imposed manual labor in exchange for release prior to being found guilty of, or even being charged with, a crime. A state cannot hold and physically punish an individual without a judicial determination of guilt after a trial or plea without violating the punished's due process rights. Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); Williams-El v. Johnson, 872 F.2d 224, 229 (8th Cir.1989).